In the

# United States Court of Appeals

## For the Seventh Circuit

No. 01-3487

CHAD SCHLOSSER and FRANCES SCHLOSSER,

*Plaintiffs-Appellants*,

*v.*

FAIRBANKS CAPITAL CORPORATION,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 2:01 C 2121—**Michael P. McCuskey**, *Judge.*

ARGUED FEBRUARY 11, 2002—DECIDED MARCH 20, 2003

Before RIPPLE, DIANE P. WOOD, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Fairbanks Capital Corp. acquired 12,800 allegedly delinquent high-interest mortgages from ContiMortgage, including one owed by the plaintiffs, Chad and Frances Schlosser. Identifying itself as a debt collector, Fairbanks sent the Schlossers a letter asserting that the debt was in default. Fairbanks was mistaken; the Schlossers were not in default. The Schlossers filed suit claiming that Fairbanks's letter failed to notify them of their right to contest the debt, as required by the Fair Debt Collection Practices Act (FDCPA), 15

U.S.C. § 1692g(a). Fairbanks's mistake, as it turned out, worked to its advantage: the district court concluded that, because the debt was not actually in default when Fairbanks acquired it, Fairbanks was not a debt collector within the meaning of the FDCPA. The court granted Fairbanks's motion to dismiss, and the Schlossers appeal. We disagree with the district court's interpretation of the FDCPA and therefore reverse.

## I. BACKGROUND

Fairbanks purchased the Schlossers' mortgage from ContiMortgage as part of Fairbanks's acquisition of 128,000 subprime mortgages, 10% of which were identified as in default. According to ContiMortgage's records, the Schlossers' mortgage was delinquent at the time of the transfer, and Fairbanks treated it as such. It sent a letter to the Schlossers, identifying itself as a debt collector, notifying the Schlossers that they were in default, and attempting to collect:

DEMAND LETTER—YOU COULD LOSE YOUR HOME! . . .

This letter constitutes formal notice of default under the terms of the Note and Deed of Trust or Mortgage because of failure to make payments required. . . .

This letter is a formal demand to pay the amounts due. In the event that these sums are not paid to Fairbanks Capital Corp. "Fairbanks" within 30 days of this letter the entire unpaid balance, together with accrued interest, legal fees and expenses, WILL BE ACCELERATED and foreclosure proceedings will be instituted. . . .

You have the right to bring a court action if you claim that the loan is not in default or if you be-

lieve that you have any other defense to the acceleration and sale. . . .

This letter is from a debt collector and is an attempt to collect a debt. Any information obtained will be used for that purpose.

When the Schlossers tried to make their regular monthly payment to Fairbanks, Fairbanks refused, again asserting that the loan was in default, and instead instituted foreclosure proceedings. The Schlossers sent letters insisting that they weren't in default and eventually Fairbanks caused the foreclosure action to be dismissed.

The Schlossers filed suit against Fairbanks for violation of the FDCPA, claiming (on behalf of themselves and a class of similar debtors) that Fairbanks's letter did not notify them of their right to contest the debt in writing, which would have required Fairbanks to verify the debt before continuing collection activity. *See* 15 U.S.C. § 1692g(a)(4). They also asserted an individual claim under the Illinois Consumer Fraud Act, 815 Ill. Comp. Stat. 505/2. The district court granted Fairbanks's motion to dismiss the FDCPA claim, denied as moot the Schlossers' motion for class certification, and declined to take supplemental jurisdiction over the state law claim. The Schlossers appeal.

## II. ANALYSIS

As the district court recognized, the FDCPA distinguishes between "debt collectors" and "creditors." Creditors, "who generally are restrained by the desire to protect their good will when collecting past due accounts," S. Rep. 95-382, at 2 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1696, are not covered by the Act. Instead, the Act is aimed at debt collectors, who may have "no future contact with the consumer and often are unconcerned with the

consumer's opinion of them." *See id.* In general, a creditor is broadly defined as one who "offers or extends credit creating a debt or to whom a debt is owed," 15 U.S.C. § 1692a(4), whereas a debt collector is one who attempts to collect debts "owed or due or asserted to be owed or due another." *Id.* § 1692a(6).

For purposes of applying the Act to a particular debt, these two categories—debt collectors and creditors—are mutually exclusive. However, for debts that do not originate with the one attempting collection, but are acquired from another, the collection activity related to that debt could logically fall into either category. If the one who acquired the debt continues to service it, it is acting much like the original creditor that created the debt. On the other hand, if it simply acquires the debt for collection, it is acting more like a debt collector. To distinguish between these two possibilities, the Act uses the status of the debt at the time of the assignment:

> (6) The term "debt collector" means any person who . . . regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. . . . The term does not include—
>
> (F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . (iii) *concerns a debt which was not in default at the time it was obtained by such person.*

15 U.S.C. § 1692a (emphasis added). In other words, the Act treats assignees as debt collectors if the debt sought to be collected was in default when acquired by the assignee, and as creditors if it was not. *See Bailey v. Sec. Nat'l Serving Corp.*, 154 F.3d 384, 387 (7th Cir. 1998); *Whittaker v. Ameritech Corp.*, 129 F.3d 952, 958 (7th Cir. 1998); *see also Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 403-04

(3d Cir. 2000); *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 106-07 (6th Cir. 1996); *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985).

Fairbanks argues (and the district court held) that under the plain language of the statutory definition, it is not a debt collector because the Schlossers' loan was not actually in default when Fairbanks acquired it. Fairbanks relies on *Bailey,* in which we held that a mortgage servicing company was not a debt collector under the FDCPA when it attempted to collect on a forbearance agreement acquired from HUD. *See* 154 F.3d at 388. Payments on that agreement were current, but the original mortgage, which was replaced by the forbearance agreement, had been in default. *Id.* We held that "[c]ommon sense and the plain meaning" of the statute dictated application of the exclusion in § 1692a(6)(F)(iii) because the defendant was not attempting to collect on the original note, but rather the forbearance agreement, which was not in default at the time it was acquired. *Id.* at 387-88.

Although, as in *Bailey*, the debt in this case was not actually in default, Fairbanks acquired it as a debt in default, and its collection activities were based on that understanding. As applied to these circumstances, the meaning of § 1692a(6)(F)(iii) is less obvious than it was in *Bailey*, which did not address the question posed by this case: do Fairbanks's mistaken assertions and collection activity have any relevance to the application of the exclusion, or does it depend only on the actual status of the loan when it was acquired? We have found no opinions addressing this question, which we review de novo, assuming for purposes of the motion to dismiss that the allegations of the complaint are true. *See Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000).

Fairbanks's interpretation, which exempts its collection activities from the statute if the debt was not actually in

default when acquired, produces results that are odd in light of the conduct regulated by the statute. For example, § 1692g, upon which the Schlossers' suit is based, requires debt collectors to notify the debtor that she may contest the debt in writing, and that if she does, the collector will obtain verification of the debt. 15 U.S.C. § 1692g(a). This validation provision is aimed at preventing collection efforts based on mistaken information. *See* S. Rep. No. 95-382, at 4 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1699. Yet Fairbanks's interpretation makes its mistake about the status of the loan irrelevant. So those like Fairbanks that obtain a mix of loans, only some of which are in default, would be subject to the FDCPA if they fail to provide the required notice of the mechanism for correcting mistakes when they attempt to collect a loan they assert is in default—but only as to those loans about which they are *not* mistaken. And the same would be true for professional debt collectors in the business of acquiring defaulted loans for collection; debtors correctly asserted as being in default when the loan was acquired could challenge the failure to provide notices aimed at correcting mistakes, while those mistakenly identified as in default would have no recourse under the statute. We cannot believe that Congress intended such implausible results, and therefore, even if Fairbanks's reading is the most straightforward, it is not necessarily the correct one:

> Usually when a statutory provision is clear on its face the court stops there, in order to preserve language as an effective medium of communication from legislatures to courts. If judges won't defer to clear statutory language, legislators will have difficulty imparting a stable meaning to the statutes they enact. But if the clear language, when read in the context of the statute as a whole or of the commercial or other real-world (as opposed to

> law-world or word-world) activity that the statute is regulating, points to an unreasonable result, courts do not consider themselves bound by "plain meaning," but have recourse to other interpretive tools in an effort to make sense of the statute.

*Krzalic v. Republic Title Co.*, 314 F.3d 875, 879-80 (7th Cir. 2002) (citing *Public Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 453-55 (1989); *Green v. Bock Laundry Mach. Co.*, 490 U.S. 504, 527 (1989) (Scalia, J., concurring); *AM Int'l, Inc. v. Graphic Mgmt. Assocs., Inc.*, 44 F.3d 572, 577 (7th Cir. 1995)); *see also United States v. X-Citement Video, Inc.*, 513 U.S. 64, 69-70 (1994); *Foufas v. Dru*, 319 F.3d 284, 287 (7th Cir. 2003).

We think the language of § 1692a(6)(F)(iii) is susceptible to an alternative interpretation, one that avoids these odd results and is more consistent with the rest of the statute. Fairbanks's interpretation narrowly focuses on the limitation in subparagraph (iii) regarding the default status of the debt. *See* 15 U.S.C. § 1692a(6)(F)(iii) ("concerns a debt which was not in default"). But the antecedent of that limitation is "such activity," which in turn refers to "collecting or attempting to collect any debt owed or due or asserted to be owed or due." *See id.* § 1692a(6)(F). This suggests that the relevant status is that of the debt or asserted debt that is the subject of the collection activity, particularly when read along with the statute's definition of "debt" as an "obligation or alleged obligation," *see id.* § 1692a(5), which (along with other definitions in the Act, *see*, *e.g.*, *id.* § 1692a(3) (defining "consumer" as one "obligated or allegedly obligated to pay any debt")) extends the reach of the statute to collection activities without regard to whether the debt sought to be collected is actually owed. *See Schroyer v. Frankel*, 197 F.3d 1170, 1178 (6th Cir. 1999) ("[T]he FDCPA holds 'debt collectors liable for various abusive, deceptive, and unfair debt collection practices regardless of whether the

debt is valid.'") (quoting *McCartney v. First City Bank*, 970 F.2d 45 (5th Cir. 1992)); *see also Baker v. G. C. Servs. Corp.*, 677 F.2d 775, 777 (9th Cir. 1982).

Focusing on the status of the obligation asserted by the assignee is reasonable in light of the conduct regulated by the statute. For those who acquire debts originated by others, the distinction drawn by the statute—whether the loan was in default at the time of the assignment—makes sense as an indication of whether the activity directed at the consumer will be servicing or collection. If the loan is current when it is acquired, the relationship between the assignee and the debtor is, for purposes of regulating communications and collection practices, effectively the same as that between the originator and the debtor. If the loan is in default, no ongoing relationship is likely and the only activity will be collection. But if the parties to the assignment are mistaken about the true status, that status will not determine the nature of the activities directed at the consumer. It makes little sense, in terms of the conduct sought to be regulated, to exempt an assignee from the application of the FDCPA based on a status it is unaware of and that is contrary to its assertions to the debtor. The assignee would have little incentive to acquire accurate information about the status of the loan because, in the context of the mistake in this case, its ignorance leaves it free from the statute's requirements.

It is of course conceivable that Congress intended a bright-line rule based on the actual status of the debt at the time of assignment without regard to the assignee's knowledge or assertions about the debt, even if such a rule would be under-inclusive. But another provision of the statute suggests otherwise; according to the parallel exclusion for assignees from the statute's definition of "creditors" (read together with the definition of debt in § 1692a(5)), the purpose of the acquisition matters:

> such term [creditor] does not include any person to the extent that he receives an assignment or transfer of [an obligation or alleged obligation] in default solely for the purpose of facilitating collection of such debt for another.

*See* 15 U.S.C. § 1692a(4). Under this definition, Fairbanks is not a creditor because it received an assignment of "an alleged obligation in default" solely for the purpose of facilitating collection (or so we could reasonably infer from the allegations of the complaint). If this view of § 1692a(4) is correct, then Fairbanks cannot be right that it is not a debt collector. The structure of the Act suggests that it must be one or the other.[1]

Fairbanks, relying exclusively on its textual argument based on § 1692a(6)(F)(iii), does not attempt to reconcile its interpretation with the definition of creditor in § 1692a(4), nor does it present any evidence that Congress intended an interpretation that creates the implausible results we described earlier. *See Green*, 490 U.S. at 527 (Scalia, J., concurring) (rejecting interpretation based on plain meaning because "counsel have not provided, nor have we discovered, a shred of evidence that anyone has ever proposed or assumed such a bizarre disposition"). We therefore reject Fairbanks's interpretation and hold that, based on the allegations of the complaint, the exclusion in § 1692a(6)(F)(iii) does not apply because Fairbanks attempted to collect on a debt that it asserted to be in default and because that asserted default existed when Fairbanks acquired the debt.

---

[1] If the mistake in this case went the other way, and Fairbanks purchased the loan for the purpose of servicing and treated it as such, but it turned out to actually be in default, then under § 1692a(4) it would be classified as a creditor and therefore outside the scope of the Act.

## III. CONCLUSION

The judgment of the district court is REVERSED and the case is REMANDED for further proceedings.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*