In the

# United States Court of Appeals

### For the Seventh Circuit

———————

No. 06-3211

RODNEY MATTHEWS,

*Plaintiff-Appellant,*

*v.*

MILWAUKEE AREA LOCAL POSTAL
WORKERS UNION, AFL-CIO,

*Defendant-Appellee.*

———————

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 06 C 282—**Lynn Adelman**, *Judge.*

———————

ARGUED FEBRUARY 9, 2007—DECIDED JULY 23, 2007

———————

Before BAUER, FLAUM, and WILLIAMS, *Circuit Judges.*

BAUER, *Circuit Judge.* Rodney Matthews, a former employee of the United States Postal Service ("Postal Service"), filed suit against his union, the Milwaukee Area Local of the American Postal Workers Union, AFL-CIO ("the union"), claiming that it had failed to represent him fairly in connection with a grievance that it had filed on his behalf. The district court granted summary judgment to the union. Matthews appeals, and we affirm.

## I. Background

On September 18, 2003, Rick Montgomery, a Postal Service branch manager, found Matthews standing by his locker away from his work station. Montgomery asked Matthews if he was clocked in, and Matthews answered untruthfully that he was not. Matthews then returned to his work station, where he told Montgomery, "I owe you one." Montgomery asked Matthews to explain the remark, and Matthews said, "You know what I mean, hero." After the incident, the Postal Service placed Matthews on an emergency placement, non-pay suspension for violating the Postal Service's zero tolerance policy as to violence or the threat of violence. Matthews asked the union to file a grievance on his emergency placement immediately after his suspension.

Matthews suspension lasted eight days before the Postal Service changed his status to administrative leave and resumed paying him. On October 19, 2003, the union filed a Step 1 grievance, challenging the emergency placement suspension and demanding that Matthews be returned to work with compensation for his eight days of lost pay. After investigating the incident, the Postal Service denied the Step 1 emergency placement grievance. Thereafter, the union filed a Step 2 emergency placement grievance.

On October 27, 2003, the Postal Service issued a Notice of Proposed Removal to Matthews, indicating that it intended to terminate his employment with the Postal Service. The Postal Service contended that it had just cause for terminating Matthews because he had violated its zero tolerance policy and he had lied to his supervisor. On November 7, 2003, the union filed a second grievance, this one challenging Matthews' proposed removal; however, Matthews decided to withdraw this grievance on November 10, 2003. On December 5, 2003, Matthews and his attorney met with the Postal Service to challenge

his proposed removal. During the meeting, Matthews admitted that he was clocked in while away from his work station on September 18 and that he had lied to Montgomery.

On January 8, 2004, the Postal Service denied the union's Step 2 emergency placement grievance. As justification for its decision, the Postal Service referred to its investigation of the September 18 incident and to Matthews' previous disciplinary proceedings with the Postal Service.[1]

The Postal Service terminated Matthews on January 9, 2004. Matthews appealed his termination of employment to the Merit Systems Protection Board ("MSPB").

On January 15, 2004, the union appealed the denial of the emergency placement grievance to arbitration. On August 13, 2004, the union entered into an agreement with the Postal Service to hold the arbitration of the emergency placement grievance in abeyance pending the outcome of the MSPB's decision regarding Matthews' removal. On September 8, 2004, an MSPB administrative law judge upheld Matthews' removal. Matthews appealed, and the MSPB upheld the judge's decision on August 30, 2005.

After Matthews' removal was upheld, the union attempted to settle its emergency placement grievance. Although the Postal Service initially declined to pay Matthews for any of the eight days' pay that he lost during the emergency placement suspension, on September 30, 2005, the Postal Service agreed to settle the grievance for 16 hours of pay amounting to $367.76.

---

[1] In 2002, the Postal Service and Matthews entered into a settlement agreement wherein Matthews agreed that any future threatening behavior would result in his termination.

Matthews filed the present suit in Wisconsin state court, claiming that the union failed to represent him fairly in connection with the emergency placement grievance. The union removed the case to federal court.[2] Before the district court, Matthews argued that the union's handling of the emergency placement suspension grievance was arbitrary and perfunctory, claiming that the union untimely filed the emergency placement suspension grievance and that the union should have arbitrated the grievance rather than holding it in abeyance pending the MSPB's proceeding. Matthews claims that had the union brought the emergency placement grievance to arbitration in an timely manner, he would have been placed back on duty, withdrawn his appeal to the MSPB relating to his removal, filed a removal grievance, and prevailed at the arbitration of the removal grievance.

The union moved for summary judgment. The district court found that the union's handling of the emergency placement grievance was not arbitrary, discriminatory, or in bad faith. Accordingly, the district court granted summary judgment to the union, concluding that a reasonable factfinder could not find that the union breached its duty to fairly represent Matthews.

## II. Discussion

We review a district court's grant of summary judgment *de novo. Konen v. Int'l Bhd. of Teamsters, Local 200*, 255 F.3d 402, 406 (7th Cir. 2001). In doing so, we draw every

---

[2]  Under § 2 of the Postal Reorganization Act, district courts with personal jurisdiction over the parties have subject matter jurisdiction over "suits for violations of contracts between the Postal Service and a labor organization representing Postal Service employees. . . ." *See* 39 U.S.C. § 1208(b).

justifiable inference from the record in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

A union breaches its duty of fair representation if its conduct is arbitrary, discriminatory, or in bad faith. *Vaca v. Sipes*, 386 U.S. 171, 190, 87 S. Ct. 903, 17 L. Ed. 2d 842 (1967); *McKelvin v. E.J. Brach Corp.*, 124 F.3d 864, 867 (7th Cir. 1997). On appeal, Matthews does not contend that the union's actions were discriminatory or in bad faith. Instead, he argues that the union processed the emergency placement grievance in an arbitrary and perfunctory manner. In order to prevail on this claim, in addition to showing that the union acted arbitrarily, Matthews must also establish that he "was actually harmed by the union's actions" and that "the outcome of the [grievance] would probably have been different but for the union's activities." *Garcia v. Zenith Elecs. Corp.*, 58 F.3d 1171, 1176-77 (7th Cir. 1995) (*citing Black v. Ryder*, 15 F.3d 573, 585 (6th Cir. 1994); *Ooley v. Schwitzer Div., Household Mfg. Inc.*, 961 F.2d 1293, 1303-04 (7th Cir.), *cert. denied*, 506 U.S. 872, 113 S. Ct. 208, 121 L. Ed. 2d 148 (1992)).

"Our review of whether a union acted arbitrarily in deciding not to pursue a grievance or arbitration is 'highly deferential.'" *See McKelvin*, 124 F.3d at 867 *(quoting Air Line Pilots Ass'n Int'l v. O'Neill*, 499 U.S. 65, 67, 111 S. Ct. 1127, 113 L. Ed. 2d 51 (1991)). "In applying this extremely deferential standard, we will 'not substitute

[our] judgment for that of the union, even if, with the benefit of hindsight, it appears that the union could have made a better call.'" *Id. (quoting Garcia,* 58 F.3d at 1176). Matthews' burden on summary judgment, "is not just to establish that his position is as plausible as the union's, but to show that the union's position 'could eventually be deemed not even colorable[.]'" *Id.* at 868 (*quoting Trnka v. Local Union No. 688*, 30 F.3d 60, 61 (7th Cir. 1994)).

Matthews argues that the union processed his grievance in an arbitrary and perfunctory manner by (1) waiting thirty-one days to file the Step 1 emergency placement grievance rather than within fourteen days of his suspension;[3] (2) failing to provide sufficient background facts concerning the incident between Matthews and Montgomery on the emergency placement grievance form; (3) holding the emergency placement grievance in abeyance pending the outcome of the MSPB's decision regarding Matthews' removal; and (4) settling the emergency placement grievance rather than proceeding to arbitration. For several reasons Matthews is unable to establish that the union's actions in processing the grievance were irrational or that its actions harmed the outcome of the grievance.

First, the Postal Service never challenged the timeliness of the emergency placement grievance. The Postal Service treated the grievance just as if it had been filed within fourteen days of the initial incident and denied the grievance on its merits. Second, the grievance prepared by the union stated that "grievant was placed on emer[gency] placement without just cause" and requested that "grievant be made whole for all lost wages and brought back to work immediately." This was enough information

---

[3] The Collective Bargaining Agreement, under Article 15.2, Step 1, suggests that the union file a grievance within fourteen days of the incident.

for the Postal Service to initiate an investigation of the September 18 incident. Before denying the emergency placement grievance, the Postal Service reviewed the facts surrounding the September 18 incident and took note of Matthews' previous disciplinary proceedings with the Postal Service. There is no evidence that the outcome of the grievance would have been different had it been filed earlier or had it detailed all the facts surrounding the exchange between Matthews and Montgomery.

Next, the union's decision to hold the emergency placement grievance in abeyance pending the outcome of Matthews' MSPB appeal was not irrational. Matthews offers no evidence that holding the grievance in abeyance actually added time to the arbitration process. The grievance already had been on the arbitration docket for eight months when the union and Postal Service agreed to stay the arbitration. The union's decision to preserve its resources and allow the MSPB to address the allegations of Matthews' misconduct on which his emergency placement and removal were based prior to proceeding to arbitration was not "so far outside a wide range of reasonableness as to be irrational." *Ooley,* 961 F.2d at 1302 (explaining that a "wide degree of deference is warranted because Congress did not intend courts to interfere with the decisions of the employee's chosen bargaining representative.").

Finally, "a union does not breach its statutory duty of fair representation . . . merely because it settled the grievance short of arbitration." *Vaca*, 386 U.S. at 191. The union's decision to settle rather than arbitrate the emergency placement was not arbitrary. Settlement was a reasonable alternative considering that the most that the union could have won by arbitrating the grievance was eight days of back pay. The decision was also reasonable because the union had a relatively weak case to present at

arbitration: Matthews had a past record of misconduct at the Postal Service; Matthews agreed in 2002 that any future threatening behavior would result in his termination; Matthews' comments to Montgomery could be classified as threatening; Matthews had lied to Montgomery during the incident; and the MSPB had upheld the Postal Service's removal of Matthews. Given these circumstances, the union did not act arbitrarily in settling the emergency placement grievance for sixteen hours of back pay.

We agree with the district court that no reasonable factfinder could find that the union breached its duty of fair representation.

### III.  Conclusion

For the reasons stated above, we AFFIRM the district court's grant of summary judgment.

A true Copy:

      Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*
