In the

# United States Court of Appeals

### For the Seventh Circuit

No. 07-1075

VERSIA S. MCKINNEY,

*Plaintiff-Appellee,*

*v.*

CADLEWAY PROPERTIES, INCORPORATED,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 04 C 8248—**Virginia M. Kendall**, *Judge.*

ARGUED OCTOBER 30, 2007—DECIDED NOVEMBER 13, 2008

Before MANION, ROVNER, and SYKES, *Circuit Judges*.

SYKES, *Circuit Judge.* This case requires us to determine whether the defendant, Cadleway Properties, Inc., is a "debt collector" under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.* ("FDCPA"). If it is, then the FDCPA applies, and our second question is whether the "validation of debt" notice Cadleway sent to the plaintiff was clear or confusing on its face.

Reverend Versia McKinney's Chicago home was damaged by a flood in 1996. To help with repair costs, she

obtained a disaster assistance loan from the Small Business Administration ("SBA"). After McKinney ceased making payments in 2002, the SBA sold the debt to a third party, and Cadleway subsequently acquired it. In an attempt to collect on the debt, Cadleway sent McKinney a collection letter that included a notice of her right to dispute and obtain verification of the debt and of the original creditor as required by the FDCPA. McKinney responded with this lawsuit alleging the notice was confusing.

The district court entered summary judgment for McKinney, concluding that Cadleway is a debt collector and its collection letter was confusing to the unsophisticated consumer and therefore violated the FDCPA. We agree with the former conclusion but not the latter. The FDCPA covers debt collectors, not creditors, and these categories are "mutually exclusive." *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536 (7th Cir. 2003); *see also* 15 U.S.C. § 1692a(4), (6) & (6)(F). The undisputed evidence here establishes that Cadleway is a debt collector, not a creditor. Cadleway's validation-of-debt notice, however, was objectively clear and not obscured by Cadleway's request that McKinney confirm or dispute the amount she owed. Accordingly, we reverse the judgment of the district court and remand with instructions to enter judgment for Cadleway.

## I. Background

Reverend Versia McKinney's Chicago home was damaged in 1996 when a sewer backed up into her basement due to flooding. Unable to afford the repairs, McKinney

applied for and received a disaster loan for $5,200 from the SBA. The loan agreement authorized the SBA to demand immediate payment of the entire balance should McKinney fail to make a scheduled payment. Indeed, at some point after disbursement of the loan, McKinney was unable to keep up with the payments and ceased making them altogether, although the SBA never demanded that she pay the outstanding balance.

Instead, in 2002 the SBA sold McKinney's loan to Lehman Capital/Aurora Loan Servicing Inc., which eventually sold it to Cadleway. Cadleway's first contact with McKinney was in September 2004 when it issued a collection letter informing her that it had purchased the debt and that she should begin making payments to the new address provided. A bold-faced, underlined notice on the front of the letter directed McKinney to read the "Validation of Debt Notice" on the reverse side of the letter.

The "Validation of Debt Notice" on the back of the letter was designed to comply with the FDCPA by informing McKinney of her statutory rights regarding the debt. The notice stated that according to Cadleway's records, McKinney owed $4,370.02, all but $337.39 of which was principal on the original loan. The notice also stated that McKinney had 30 days to notify Cadleway if she disputed the debt, and in that instance Cadleway would obtain and mail to her a verification of the debt, its amount, and the contact information of the original creditor. The notice further stated that if McKinney did not dispute the validity of the debt

within 30 days, then Cadleway would assume the debt was valid. At the bottom of the notice was a form on which McKinney was asked to "confirm this balance or state the amount which you believe is the correct balance."

McKinney sent the letter to Michelle Weinberg, an attorney with the Legal Assistance Foundation of Metropolitan Chicago. Weinberg replied to Cadleway, asking it to "cease all further communications regarding this account" because Cadleway was not a licensed debt collector and McKinney "is simply unable to pay this debt." McKinney then filed this action in the district court under 15 U.S.C. § 1692k, which makes debt collectors who violate the FDCPA civilly liable for actual and statutory damages as well as attorney's fees and court costs. McKinney alleged that Cadleway's collection letter violated the FDCPA because an unsophisticated consumer would be confused about her right to dispute the debt and obtain verification of its validity. McKinney asked only for statutory damages and attorney's fees; she did not claim actual damages.

The case was initially assigned to District Judge Ronald Guzmán, and both parties moved for summary judgment. Judge Guzmán held that Cadleway's validation notice was confusing on its face to the unsophisticated consumer but did not rule on whether Cadleway was a "debt collector" under the FDCPA or whether McKinney's loan was a "debt" within the meaning of the statute.

The case was thereafter transferred to District Judge Virginia Kendall, and both parties again moved for sum-

mary judgment. Judge Kendall held that McKinney's obligation was a "debt" within the meaning of the FDCPA and that Cadleway was a "debt collector" under the FDCPA because it had acquired and attempted to collect a debt that was in default at the time of acquisition.[1] Judge Kendall then entered judgment for McKinney and later amended the judgment to award her statutory damages of $1,000—the maximum allowed—as well as attorney's fees and costs.

## II. Discussion

### A. Standard of Review

A district court's grant of summary judgment is reviewed de novo. *Matthews v. Milwaukee Area Local Postal Workers Union, AFL-CIO*, 495 F.3d 438, 441 (7th Cir. 2007). The evidence in the record must be viewed in the light most favorable to the nonmoving party, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), and on cross-motions for summary judgment, inferences are drawn in favor of the party against whom the motion under consideration was made. *Hess v. Reg-Ellen Mach. Tool Corp.*, 423 F.3d 653, 658 (7th Cir. 2005). When the district court considers cross-motions for summary judgment, granting one and denying the other, the denial of summary judgment "has merged into the final judgment and is

---

[1] Judge Kendall's conclusion that McKinney's obligation was a debt within the meaning of the FDCPA is not challenged on appeal.

therefore appealable" as part of the appeal from the final judgment granting the opposing party's motion. *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997). Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).

## B.  McKinney's FDCPA Claim

The FDCPA was enacted to combat "abusive, deceptive, and unfair debt collection practices." 15 U.S.C. § 1692. To that end, the Act regulates communications relating to debt collection (§ 1692c), abusive practices of debt collectors (§ 1692d), and using false or misleading information in collection notices (§ 1692e). Relevant to this case is § 1692g, which governs a debt collector's "initial communication with a consumer in connection with the collection of any debt" and requires, among other things, that the debt collector provide notice of the consumer's right to dispute the validity of the debt and receive verification of it. § 1692g(a). Consumers may sue to enforce the Act's provisions and, if successful, recover actual damages, statutory damages, and attorney's fees and costs. § 1692k.

## 1.  Cadleway's Status as a "Debt Collector"

The FDCPA applies only to "debt collectors" seeking satisfaction of "debts" from "consumers"; it does not apply to "creditors." *Schlosser*, 323 F.3d at 536. The Act defines "creditor" as follows:

> The term "creditor" means any person who offers or extends credit creating a debt or to whom a debt is owed, *but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another.*

§ 1692a(4) (emphasis added). The Act defines "debt collector" as follows:

> The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, *or* who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

§ 1692a(6) (emphasis added).

The statutory definition of "debt collector" thus has two subcategories. It includes any person who: (1) uses an instrumentality of interstate commerce or the mails in "any business the principal purpose of which is the collection of any debts"; *or* (2) "regularly collects or attempts to collect . . . debts owed or due or asserted to be owed or due another." This second subcategory of debt collectors refers back to a group specifically *excluded* from the Act's definition of creditors—those who receive "an assignment or transfer of a debt in default" for the purpose of "facilitating [the] collection of such debt for another."

The definition of debt collector also contains certain enumerated exclusions, one of which is relevant here:

> The term [debt collector] does not include . . .

> (F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . (iii) *concerns a debt which was not in default at the time it was obtained by such person . . . .*

§ 1692a(6)(F)(iii) (emphasis added).

We have held that "[f]or purposes of applying the Act to a particular debt, these two categories—debt collectors and creditors—are mutually exclusive." *Schlosser*, 323 F.3d at 536. We have also observed, however, that "for debts that do not originate with the one attempting collection, but are acquired from another, the collection activity related to that debt could logically fall into either category." *Id.* *Schlosser* noted that in such a case—one involving a debt originated by another and subsequently acquired by the entity attempting collection—"the Act uses the status of the debt at the time of the assignment" to distinguish between a debt collector and a creditor. *Id.*

The Act draws this distinction in a rather indirect way, however—by the *exclusionary* language, quoted above, in the statutory definitions of creditor and debt collector. That is, the definition of creditor excludes those who acquire and attempt to collect a "debt *in default*," § 1692a(4) (emphasis added), while the definition of debt collector excludes those who acquire and attempt to collect "a debt which was *not in default* at the time it was obtained," § 1692a(6)(F) (emphasis added). So one who acquires a "debt in default" is categorically *not* a creditor; one who acquires a "debt not in default" is categorically *not* a debt collector.

Thus, we held in *Schlosser* that the Act "treats assignees as debt collectors if the debt sought to be collected was in default when acquired by the assignee, and as creditors if it was not." 323 F.3d at 536; *see also Bailey v. Sec. Nat'l Servicing Corp.*, 154 F.3d 384, 387 (7th Cir. 1998) ("The plain language of § 1692a(6)(F) tells us that an individual is not a 'debt collector' subject to the Act if the debt he seeks to collect was not in default at the time he purchased (or otherwise obtained) it."). We explained that "[f]ocusing on the status of the obligation asserted by the assignee is reasonable in light of the conduct regulated by the statute," which generally covers debt collection, not debt servicing:

> For those who acquire debts originated by others, the distinction drawn by the statute—whether the loan was in default at the time of the assignment—makes sense as an indication of whether the activity directed at the consumer will be servicing or collection. If the loan is current when it is acquired, the relationship between the assignee and the debtor is, for purposes of regulating communications and collection prac-tices, effectively the same as that between the origina-tor and the debtor. If the loan is in default, no ongoing relationship is likely and the only activity will be collection.

*Schlosser*, 323 F.3d at 538. Accordingly, the purchaser of a debt in default is a debt collector for purposes of the FDCPA even though it owns the debt and is collecting for itself. *Id.* at 538-39; *see also FTC v. Check Investors, Inc.*, 502 F.3d 159, 171-74 (3d Cir. 2007) (holding that an entity engaged in collection activity on a defaulted debt acquired

from another is a "debt collector" under the FDCPA even though it "may actually be owed the debt").

Cadleway argues that the evidence on the cross-motions for summary judgment is insufficient to establish its status as a debt collector. We disagree. The FDCPA does not define "default," but it is undisputed that McKinney's debt had been delinquent for at least two years when Cadleway purchased it, and we think this suffices to establish that it was a "debt in default" when it was acquired.[2] Accordingly, under *Schlosser*'s interpretation of the "mutually exclusive" statutory definitions of "creditor" and "debt collector," Cadleway is a debt collector.

---

[2] The Second Circuit has observed in this context that delinquency and default are two distinct concepts. *See Alibrandi v. Fin. Outsourcing Servs., Inc.*, 333 F.3d 82, 86 (2d Cir. 2003) ("[C]ourts have repeatedly distinguished between a debt that is in default and a debt that is merely outstanding, emphasizing that only after some period of time does an outstanding debt go into default."). The court held in *Alibrandi* that because the FDCPA does not define "default," the default terms of the debt transaction itself should control. *Id.* at 87 n.5. Here, the original loan agreement between the SBA and McKinney provides that the SBA "is authorized to declare all or any part of said indebtedness immediately due and payable upon the happening of any of the following events," including "[f]ailure to pay any part of the principal or interest on this Note when due." As we have noted, it is undisputed here that at the time Cadleway acquired this debt, McKinney had not made any payments for at least two years. Although the SBA had not demanded immediate full payment, McKinney had plainly defaulted on her payment obligations.

Cadleway maintains there is insufficient evidence in the record to establish that the "principal purpose" of its business was the collection of debts or that it "regularly collects" debts owed to "another." § 1692a(6). As we have discussed, however, under *Schlosser*, an agency in the business of acquiring and collecting on defaulted debts originated by another is a debt collector under the FDCPA even though it actually may be collecting for itself. In its answers to McKinney's interrogatories, Cadleway admitted to issuing nearly 3,500 letters identical to the one it sent to McKinney during the year-and-a-half period surrounding the collection activity in this case. It is reasonable to infer that at least some—perhaps most—of this voluminous collection activity related to debts, like McKinney's, that were in default when acquired by Cadleway. There is no evidence in the record to support an inference more favorable to Cadleway. Cadleway's interrogatory answer is therefore sufficient to establish that it "regularly collects" defaulted debts. We agree with the district court that Cadleway is a debt collector under the FDCPA.

## 2. Cadleway's Validation of Debt Notice

The FDCPA requires debt collectors to provide certain information "in the initial communication" with the consumer or "[w]ithin five days after the initial communication." § 1692g(a). This includes the amount of the debt, the name of the creditor to whom the debt is owed, notice of the consumer's right to dispute the validity of the debt within 30 days of the communication, and to require the debt collector to obtain verification of the debt and mail it to the consumer. § 1692g(a)(1)-(4). The debt collector is also

required to advise the consumer that "upon the consumer's written request, . . . the debt collector will provide the . . . name and address of the original creditor." § 1692g(a)(5). Upon receipt of such request, or if the consumer disputes the debt, the debt collector must "cease collection of the debt" until a verification of the debt and the original creditor is mailed to the consumer. § 1692g(b).

Although the statute does not specify the manner in which the required disclosures must be provided, we have held, "plausibly enough, that it is implicit that the debt collector may not defeat the statute's purpose by making the required disclosures in a form or within a context in which they are unlikely to be understood by the unsophisticated debtors" the statute seeks to protect. *Bartlett v. Heibl*, 128 F.3d 497, 500 (7th Cir. 1997). Impermissible communication tactics include flat-out contradiction, overshadowing the information with other text or formatting, or "failure to explain an *apparent* though not actual contradiction." *Id.* at 500-01.

Whether the debt collector's letter complies with the statute is determined objectively; the inquiry is whether an "unsophisticated consumer or debtor" would be confused by the contents of the letter. *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005). The unsophisticated debtor is "uninformed, naive, [and] trusting" but is also assumed "to possess rudimentary knowledge about the financial world and is capable of making basic logical deductions and inferences." *Id.* (internal quotation marks omitted). In the normal case, the plaintiff must come forward with more than her own confusion as evidence of an FDCPA violation. "Rather, a plaintiff must demonstrate

that the letter's language unacceptably increases the level of confusion" such that "a significant fraction of the population would be similarly misled." *Sims v. GC Servs. L.P.*, 445 F.3d 959, 963 (7th Cir. 2006) (internal quotation marks omitted). We have suggested that this requirement "might be met through the use of a carefully designed and conducted consumer survey" or appropriate expert testimony. *Durkin*, 406 F.3d at 415.

In some situations, however, a debt collector's letter may be so clearly confusing on its face that a court may award summary judgment to the plaintiff on that basis. *Id.* "If it is apparent just from reading the letter that it is unclear . . . and the plaintiff testifies credibly that she was indeed confused," then further evidence may not be necessary provided the plaintiff "is representative of the type of people who received that or a similar letter." *Chuway v. Nat'l Action Fin. Servs., Inc.*, 362 F.3d 944, 948 (7th Cir. 2004).

McKinney presented no extrinsic evidence that Cadleway's validation-of-debt notice would be confusing to a significant fraction of the population. Moreover, she testified that the letter was *not* confusing *to her*. Instead, she testified to confusion stemming from the nature of the assistance she received from the SBA. As she put it during her deposition: "The original materials, allegedly, was FEMA disaster assistance. This is what confused me, that. How did it become a loan? I've always been concerned about that." McKinney apparently assumed the money was a grant from FEMA, not a loan from the SBA. Setting aside the fact that any confusion in this regard was not occasioned by anything in Cadleway's collection letter,

McKinney's assumption was completely unwarranted; the documents she signed from the SBA clearly identified the transaction as a loan with an interest rate and payment schedule. Indeed, if McKinney thought it was an outright grant, then there would be no reason for her to have made any payments at all on the balance. *See Williams v. OSI Educ. Servs., Inc.*, 505 F.3d 675, 679 (7th Cir. 2007) (discounting confusion resulting from "unrealistic, peculiar, [or] bizarre" interpretations of collection letters).

Regarding the letter itself, McKinney testified that she was not confused about her right to request the identity of the original creditor. She also said that she understood the letter's explanation of her right to request verification of the debt from Cadleway; she said only that she did not understand how she could calculate the correct amount due because she did not "have those records." She testified generally that the letter was "ambiguous," which she distinguished from "conflicting." Cadleway's attorney asked, "Can you point to any particular paragraph that caused you confusion about your right to dispute the debt?" McKinney equivocated: "I told you, it was the entire letter." Pressed for specific points of confusion, McKinney was unable to identify any: "It confuses me, that they have a figure here that I do not agree with, and I will not sign. It confuses me. Where could they have gotten such a figure? Where did they get it?" Generalities like this do not suffice to sustain

the plaintiff's burden on an FDCPA claim.[3]

There is nothing on the face of Cadleway's letter that makes its validation-of-debt notice confusing to the unsophisticated consumer. The validation-of-debt notice appears on the reverse side of the letter in clear, easy-to-read type, and contains all the disclosures required by § 1692g. On the front of the letter, a notice in bold-face, underlined type specifically directs the recipient to read the validation-of-debt notice on the back. The district court held that the confirmation request on the bottom of the notice rendered the entire notice confusing, but we disagree. This section of the letter is essentially a form for the debtor to use to confirm or dispute the debt; it asks the debtor to either confirm the total amount owed or dispute the total and indicate what the amount should be. This does not contradict any of the statutory notices given in the body of the validation-of-debt notice, which clearly communicate the consumer's right to dispute the debt and require the debt collector to obtain verification of it.

---

[3] McKinney did testify that she did not understand the paragraph of the notice that stated the total amount owed, including interest and charges; that paragraph identified the amount of principal and interest owed and also stated that "[b]ecause of interest, late charges and other charges that may vary from day to day, the amount due on the day you pay may be greater." This language is an almost exact replica of the "safe harbor" we established in *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 876 (7th Cir. 2000), for debt collectors to satisfy 15 U.S.C. § 1692g(a)(1).

The district court thought the presence of this confirmation provision might suggest to an unsophisticated consumer that confirmation was *obligatory* in order to avoid the risk of credit-rating damage. But the form permits the consumer to *either* confirm the debt *or* to dispute it and insert any other amount (including "zero"). The form does nothing to imply that confirmation is obligatory. Asking the consumer to confirm or dispute the debt—and providing a form on which to do so—does not obscure or overshadow the information provided earlier in the validation-of-debt notice. That notice fully complied with the requirements of § 1692g and did so in a manner that would not be confusing to the unsophisticated consumer. Because McKinney did not present any other evidence tending to show that the notice would mislead a significant fraction of the population, she failed to carry her burden on her FDCPA claim.[4]

---

[4] Our conclusion in this regard encompasses both McKinney's burden on her own motion for summary judgment as well as her responsive burden in connection with Cadleway's cross-motion for summary judgment. As our dissenting colleague notes, there are several ways McKinney might have established that the validation-of-debt letter was confusing. *See* Dissent, n.1. She argued in her summary-judgment motion that the letter was confusing as a matter of law to the average unsophisticated consumer. Beyond her burden on this motion, however, McKinney was required to demonstrate a triable issue of fact in order to defeat Cadleway's cross-motion for summary judgment. She did not. It is true that cross-motions for summary judgment do not waive the right to a trial, *see Miller v. LeSea Broad. Group, Inc.*, 87 F.3d 224, 230 (7th Cir. 1996);

(continued...)

Accordingly, although the district court properly con-
cluded that Cadleway was a debt collector under the
FDCPA, it improperly entered judgment for McKinney on
the merits of the claim. The judgment of the district court
is REVERSED and the case is REMANDED with instructions
to enter judgment in favor of Cadleway.

---

[4] (...continued)
*Zook v. Brown*, 748 F.2d 1161, 1166 (7th Cir. 1984), but this rule
does not alter the respective burdens on cross-motions for
summary judgment—more particularly here, the responsive
burden of a plaintiff who moves for summary judgment and
is confronted with a cross-motion for summary judgment.
The motions are treated separately. *See* 10A CHARLES ALAN
WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL
PRACTICE AND PROCEDURE § 2720 (3d ed. 1998). Cadleway
maintained that its validation-of-debt letter was not con-
fusing on its face, McKinney herself was not confused (or her
vague claim of confusion was insufficient to defeat summary
judgment), and the letter would not have confused other
average consumers. Accordingly, to defeat Cadleway's motion,
McKinney could not simply rely on her pleadings and her
argument that the validation-of-debt letter was confusing as
a matter of law; she was required to establish a triable issue
on whether the average consumer would have been confused.
We have concluded that McKinney failed to carry her burden
of establishing confusion as a matter of law and therefore
summary judgment in her favor was improperly entered.
Because she also failed to produce any evidence of confusion
(e.g., evidence that she was confused and a significant fraction
of the population would be similarly confused), she failed
to carry her burden of establishing a triable issue, and
Cadleway was entitled to judgment as a matter of law.

MANION, *Circuit Judge*, concurring in part and con-
curring in the judgment. I agree with the court's well-
reasoned analysis that the validation-of-debt notice
Cadleway sent McKinney does not run afoul of the
FDCPA. That McKinney herself does not claim to have
been confused by the notice is telling. The notice is
straightforward. It contains all the disclosures required
by 15 U.S.C. § 1692g. It is in a normal, reasonably sized
font. And it allows a consumer either to confirm the total
amount owed or indicate that the total amount owed
listed on the notice is incorrect and provide the correct
amount, including $0.

Given the adequacy of the notice Cadleway sent
McKinney, we need not resolve the question of whether
Cadleway is a debt collector. But since the court
discusses the issue, it is necessary to point out that neither
the statute nor our prior precedent dictates that we con-
clude that Cadleway qualifies as a "debt collector" under
the FDCPA. As we observed in *Schlosser*, in a case such as
this—where the debt did not originate with the party
attempting collection—Cadleway "could logically fall
into either category," creditor or debt collector, because
the statutory definition of a creditor includes "any
person . . . to whom a debt is owed." *Schlosser v. Fairbanks
Capital Corp.*, 323 F.3d 534, 536 (7th Cir. 2003) (quoting
15 U.S.C. § 1692a(4)). The court resolves that ambiguity by
referencing the exclusionary language in the FDCPA's
definition of a creditor: "[the] term [creditor] does not
include any person to the extent that he receives an
assignment or transfer of a debt in default solely for the
purpose of facilitating collection of such debt for another."
*See* supra, at 7-8; 15 U.S.C. § 1692a(4). But that passage does

not automatically exclude those, like Cadleway, who "receive[ ] an assignment or transfer of a debt in default" from being a creditor just because the debt on which they are attempting to collect was in default. Rather, that exclusionary portion of the FDCPA's definition of a creditor (as well as the mirror-image provision in the FDCPA's definition of a debt collector) labels an entity "not a creditor" (and therefore a "debt collector") only if the entity is attempting to collect a debt in default "*for another*." 15 U.S.C. § 1692a(4) (emphasis added); *see id*. § 1692a(6)(F)(iii).

In this case, when Cadleway contacted McKinney, it was *not* attempting to collect a debt in default "owed or due or asserted to be owed or due *another*." *Id*. § 1692a(6)(F)(iii) (emphasis added). It was collecting on a debt it had purchased from Lehman Capital—a debt it now owned and was collecting on its own behalf. *Cf. Bailey v. Sec. Nat'l Servicing Corp.*, 154 F.3d 384, 386 (7th Cir. 1998) (defendant was servicing loans on behalf of private investors who had purchased the loans from HUD). To be a debt collector, the statute requires that Cadleway be collecting on a debt "for another." 15 U.S.C. § 1692a(4). Since Cadleway was collecting on a debt it now owned for itself, it should not be considered a debt collector, regardless of whether or not McKinney's loan was in default.

At first blush, our decision in *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534 (7th Cir. 2003), appears to inadvertently redact the FDCPA's requirement that, to be a debt collector, the party attempting to collect the debt must be doing so "for another." Not so. True, this court in

*Schlosser* concluded that the defendant, Fairbanks Capital Corp., was a debt collector under the FDCPA despite the fact that it owned the debt upon which it was attempting to collect. But the question of whether Fairbanks was a debt collector despite not attempting to collect the debt "for another" never came up in *Schlosser*. Rather, this court only addressed the narrow question of whether Fairbanks, which in its collection letter had held itself out to be a debt collector, could be considered a "creditor" under the Act when the plaintiffs were not in fact in default on their loan—even though Fairbanks had *believed* the plaintiffs to be in default at the time it had sent its notice. *Schlosser*, 323 F.3d at 536. The district court had held "that under the plain language of the statutory definition, [Fairbanks was] not a debt collector because the [plaintiffs'] loan was not actually in default when Fairbanks acquired it." *Id*. We disagreed with that statutory interpretation, holding only that Fairbanks could be a debt collector because it attempted to collect on a debt that it believed to be in default at the time it acquired the debt. *See id*. at 539. Importantly, we did not touch on the issue of whether a party attempting a collection, like Fairbanks or Cadleway, ought not to be considered a "debt collector" under the FDCPA because it then owned the debt that it was attempting to collect and was not therefore collecting the debt "for another." That issue was outside the scope of what this court in *Schlosser* was addressing, and we did not consider it.[1]

---

[1] Unlike this circuit in *Schlosser*, the Third Circuit did directly confront this issue in *F.T.C. v. Check Investors, Inc.*, 502 F.3d 159
(continued...)

We need not consider it here either; it is not necessary for the resolution of this case. Even assuming that Cadleway met the statutory definition of a debt collector, Cadleway's validation-of-debt notice was objectively clear, as explained in Part II.B.2 of the court's cogent opinion, and McKinney therefore loses. But because the court has chosen to address the issue of whether Cadleway qualifies as a debt collector, I must respectfully disagree with the court's resolution of the question.

---

[1] (...continued)
(3d Cir. 2007), but its analysis is flawed. The Third Circuit never refuted the appellant's statutory argument that it could not be a debt collector because it was owed the debt upon which it was collecting and was not therefore collecting the debt "for another." *Id*. at 172 (citing 15 U.S.C. § 1692a(4)). The Third Circuit even went so far as to admit that the appellant "appear[ed] . . . to satisfy the statutory definition of a creditor" and that "focusing on the status of the debt when it was acquired overlooks the fact that the person engaging in the collection activity may actually be owed the debt and is, therefore, at least nominally a creditor." *Id*. at 173. Nevertheless, it relied on *Schlosser*—a case that never directly addressed the issue—and inconclusive language from the legislative history (used to override the definite language in the statute) to find that the appellant was a debt collector. *See id*. at 173-74. As explained above, such a finding completely ignores the plain text ("for another") of both the statutory definition of a debt collector and the exclusionary language in the statutory definition of a creditor.

ROVNER, *Circuit Judge*, concurring in part and dissenting in part.   Although I agree with the majority opinion that Cadleway was a debt collector as defined in the Fair Debt Collection Practices Act, I disagree with its conclusion that the debt collection letter was not confusing. Judge Guzmán below determined that any reasonable jury would conclude that the unsophisticated consumer would be confused by the form. My colleague is worlds apart, finding that there is nothing confusing on the face of the letter at all. I find the latter position untenable.

The majority, the court below, and I all agree that the standard validation notice set forth in the first five paragraphs of the letter sent to Versia McKinney correctly informed the debtor that she had thirty days to dispute the validity of the date. To so dispute a debt, one only need write a letter to Cadleway at the indicated address and state simply, "I dispute the debt." These four words alone activate all of Cadleway's obligations under the FDCPA. The last paragraph, however, asks debtors to do more. It asks the debtor to confirm the amount of the debt, that is, to list a specific amount that the debtor agrees is owed, and the implied consequence for failing to do so is a damaged credit rating. Perhaps a savvy debtor might understand that the confirmation portion of the requirement is optional. I surely would not have and for the reasons I describe below, I do not think an unsophisticated consumer would either.

Imagine a not uncommon debtor who has dribbled out payments in cash and money orders as she is able—ten dollars stuffed into an envelope here, fifteen there—and

who may have been less than precise in her record keep-
ing. She knows that she owes something, and she knows
that it is less than the amount stated by the creditor, but
she does not know precisely how much less.[1] She cannot

---

[1] In fact, such is the case with McKinney herself. She explained
that she did not understand how she could calculate the correct
amount because she did not have the records. I include this
example in a footnote, because I wish to de-emphasize
McKinney's actual experience for the following reasons: There
are two ways of demonstrating that a debt collection letter
is confusing. One is to demonstrate that it is confusing on its
face. The second is to demonstrate that it would be confusing
to the average unsophisticated consumer. *Durkin v. Equifax
Check Servs., Inc.*, 406 F.3d 410, 414-15 (7th Cir. 2005) ("In some
situations, when an FDCPA violation is so 'clearly' evident on
the face of a collection letter, a court may award summary
judgment to the FDCPA plaintiff."). In either case, the actual
confusion of the plaintiff, therefore, is irrelevant unless there
is also some evidence presented that the plaintiff is representa-
tive of the group of unsophisticated consumers. *Avila v.
Rubin*, 84 F.3d 222, 227 (7th Cir. 1996) ("because [the state-
ments in the collection letter] are inconsistent and
contradictory . . . our finding that the defendants violated
§ 1692g, without reference to actual consumer confusion, is
appropriate."); *Bartlett v. Heibl*, 128 F.3d 497, 501 (7th Cir. 1997)
("the question whether a dunning letter violates the Fair Debt
Collection Practices Act does not require evidence that the
recipient was confused—or even, as we noted earlier, whether
he read the letter"). In *Chuway v. Nat'l Action Fin. Servs., Inc.*,
362 F.3d 944, 948 (7th Cir. 2004), Judge Posner states that no
further evidence of confusion is necessary if the letter is confus-

(continued...)

state that the amount she owes is "zero," as she knows this is not true. If she were to guess an amount, she would be making an admission (and probably an incorrect one) as to her amount of debt. What is she to do? The FDCPA relieves her of this burden by requiring only that she state "I dispute the debt." Cadleway's letter puts an additional burden on her and implies that her failure to comply will result in damage to her credit rating.

The majority opinion concludes that the form does nothing to imply that confirmation is obligatory. To the contrary, everything about the letter indicates otherwise. The clear direction in the last paragraph of the letter is to "confirm the balance or state the amount you believe is correct." It is then followed by a form that contemplates exactly such a confirmation. It states:

> The total amount owed as of September 24, 2004 of $___ is confirmed.

---

[1] (...continued)

ing on its face, *and* the plaintiff testifies credibly that she was indeed confused. *Id.* (emphasis added). Although he cites several cases for the former proposition, he cites none for the latter. And indeed in his earlier opinion in *Bartlett*, he notes that the FDCPA does not require evidence that the recipient was confused or even that the recipient read the dunning letter. This is, of course, true because the test for confusion is an objective one. The majority opines at length about the evidence that the collection letter was not confusing to McKinney. This is a red herring. We have no evidence that McKinney was or was not representative of the unsophisticated consumer.

The amount owed is incorrect. The total amount owed should be $___.

If Cadleway merely had wanted to help creditors by providing a form to dispute the debt it would have provided a check box option that stated, "☐ I dispute this debt." This letter is relying on a consumer's natural inclination to fill out a form provided in a letter rather than dissect the dense text of the correspondence to determine first, that confirming is different than disputing the debt, and second, that she cannot use the form, but must create her own letter from whole cloth in order to dispute the debt. That form, moreover, contradicts the requirements of the FDCPA and puts the burden on the consumer rather than the debt collector to determine the correct amount of debt owed. The confusion is compounded by the implication that failure to confirm the amount of the debt will result in a damaged credit rating. Ignoring the form thus appears to lead to detrimental consequences. The direction, the nature of the form, and the implied threat together indicate that such a confirmation is indeed required. And that requirement is different from, and in some cases directly contrary to, the requirements of the FDCPA. A debt collector may not overshadow or contradict correct FDCPA information with other messages sent with the validation notice. *Chauncey v. JDR Recovery Corp.,* 118 F.3d 516, 518 (7th Cir. 1997). The option to write "0" next to "total amount owed"—an option to which the majority points—does nothing to alleviate the problem. In particular, for the debtor who thinks she owes some amount of debt, disputes the amount asserted by the collector, but has no basis

to determine an exact correct amount, the form is nothing but confounding.

Judge Guzmán described the confusion in slightly different, although no less compelling terms. The validation notice portion of the letter (the first five paragraphs) informs the plaintiff how to dispute the debt and that it must be done within thirty days. The consequence of failing to dispute the debt is that Cadleway may assume that the entire debt is valid. The confirmation portion (the last paragraph) instructs debtors that they must confirm (rather than dispute) the debt but provides no time line for doing so. (R. at 47, p.6) The implied consequence for failing to confirm the debt is a damaged credit rating. *Id.* In sum, the two portions therefore differ in (1) the action required (dispute vs. confirm), (2) the time frame for action (thirty days vs. no stated time limit), and (3) the consequence for failing to act (the debtor will assume the validity of the debt vs. an implication that the creditor's credit rating will suffer).

Judge Guzmán concludes that the two provisions taken together could be interpreted to mean (1) that the debtor has thirty days to dispute or confirm the debt and failure to do so within that time frame will lead Cadleway to assume the entire debt is valid and to report the entire debt as unpaid to the credit bureau; or (2) that the debtor has both the option to dispute the debt within thirty days and the obligation to confirm the debt within an unspecified amount of time and that failure to do the former will lead the defendants to assume that the debt is valid and failure to do the latter

will cause them to report the entire debt as unpaid to the credit bureau. *Id.*

As the district court points out, the first interpretation requires the reader to conclude that the words dispute and confirm are synonymous and that the confirmation provision is just an elaboration of the validation notice. *Id.* The district court concluded that only "a savvy consumer would draw those conclusions from this letter. But an unsophisticated consumer, faced with a letter that separately discusses the debtor's option to dispute and apparent obligation to confirm and sets forth different consequences for the failure to do each, would not." *Id.* Judge Guzmán concluded that an unsophisticated consumer would reasonably conclude that disputing and confirming are separate acts and that failure to do the latter would damage her credit rating. *Id.*

The majority agrees with Judge Guzmán that disputing and confirming are indeed separate acts ("the form permits the consumer to *either* confirm the debt *or* to dispute it," ante at 16 (emphasis in original)), but concludes that the form does nothing to imply that confirmation is obligatory. As I concluded above, however, the letter says nothing about an *option* to confirm, and even a more sophisticated consumer would view the tone and form of the letter as a whole as *requiring* confirmation. Furthermore, even a letter that explicitly stated "you also have the option, but are not required to confirm the amount of debt so that we can report it to the credit bureau in accordance with 15 U.S.C. § 1681," would not relieve the confusion. "A letter can be confusing even to

a sophisticated reader though it does not contain an outright contradiction." *Chuway v. Nat'l Action Fin. Servs. Inc.*, 362 F.3d 944, 949 (7th Cir. 2004); *see also Johnson v. Revenue Mgmt. Corp.*, 169 F.3d 1057, 1060 (7th Cir. 1999) (the failure to explain an apparent though not actual contradiction can induce confusion). Even the statement that confirmation is optional would leave the consumer scratching her head wondering: Is this option different from the option to dispute the debt? Must I dispute the debt with a specific numeric figure? Will I be reported to the credit bureau if I dispute but do not confirm the debt? If I confirm the debt with an amount lower than the amount stated, is the debt collector still obliged to cease collection of the debt until a verification of the debt is mailed to me? The confirmation portion of the letter raises all of these questions but leaves them unanswered. Not even I know the answer without resorting to legal research. This surely cannot be the standard we require of the unsophisticated consumer. The confirmation portion of the letter is clearly confusing on its face. I therefore respectfully dissent.