**Monica PRINCE, Plaintiff,**

**v.**

**NCO FINANCIAL SERVICES, INC., Defendant.**

**No. 04–CV–214.**

United States District Court, E.D. Pennsylvania.

Nov. 29, 2004.

Mark D. Mailman, Francis & Mailman, PC, David A. Searles, Donovan Searles, LLC, Philadelphia, PA, for Plaintiff.

Andrew M. Schwartz, Marshall Dennehey Warner Coleman & Goggin, Philadelphia, PA, David Israel, Sessions Fishman & Nathan LLP, New Orleans, LA, for Defendant.

### EXPLANATION AND ORDER

ANITA B. BRODY, District Judge.

The issue presented by this motion for summary judgment[1] is whether defendant NCO Financial Services, Inc. ("NCO") is a "debt collector" under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, ("FDCPA").

## I.  Facts

In this case, the plaintiff, Monica Prince ("Prince"), seeks to bring a class action lawsuit on behalf of herself and other consumers in the Commonwealths of Pennsylvania and Kentucky against defendant NCO for misleading, unfair and deceptive collection tactics by a debt collector in violation of the FDCPA.  NCO was collecting an account for Capital One Bank ("Capital One").

Capital One's standard customer agreement contains the following provision regarding defaults:

> Default. We may consider you to be in default under this Agreement if:  (a) you fail to pay the minimum payment on time, (b) you exceed your credit limit, or (c) you pay us with funds that are returned for any reason.  To the extent permitted by law, you may also be in default under this Agreement if:  (1) you violate any of the other terms of this Agreement, or any of the terms of any other agreement with us or any of our

---

1. Plaintiff writes, "At various points in its papers, NCO describes the relief it seeks as dismissal of the complaint for failure to state a claim under the FDCPA."  (Pl.'s Mem. Reply Def.'s Opp'n at 9.) Plaintiff suggests that there is confusion as to whether NCO moved for summary judgment or to dismiss.  The defendant's motion identifies itself as a "motion for summary judgment" and the first paragraph seeks summary judgment "pursuant to Fed.R.Civ.P. 56(c)."  (Opp'n Mot. Class Certification and Mem. Supp. Mot. Summ. J.)  The use of the word "dismiss" at a few points in the 56(c) motion does not convert the motion to a 12(b)(6) motion.

affiliates, or (2) you made any false or misleading statements on your application, or (3) bankruptcy or other insolvency proceedings are instituted by you or against you. After you are in default (or after we give you any notice of or right to cure the default if required by law), we may restrict your account from new transactions, or close your account and demand immediate payment of the entire outstanding balance. In addition, as a result of the default, your minimum payment may increase without advance notice.

(*Id.* Ex. B at 4.)

The Account Servicing Agreement between NCO and Capital One indicates that the accounts referred to NCO were not in default at the time of referral:

Capital One represents that, for the entire term of this Agreement, all Accounts referred to Agency for Services shall be existing receivables of Capital One at the time of transfer to Agency and that each Account referred for Services is not in default at the time the Account is referred to Agency for Services, nor are any of the Accounts referred for Services the subject of any acceleration or enforcement action at the time of referral to Agency. The parties agree that Accounts which are not restricted shall not be deemed to be delinquent or in default.

(Opp'n Mot. Class Certification and Mot. Summ. J. Ex. B1 ¶ 2.03.)

NCO sent a letter dated February 1, 2003 to Prince regarding collection of an account she had with Capital One Bank. (Mem. Law Supp. Pl.'s Mot. Class Certification Ex. A.) The letter from NCO to Prince listed the minimum amount due as $113. (*Id.*) This amount was on a detachable portion of the letter that was intended to be returned with the payment. (*Id.*) The letter stated that NCO had been "re-quested by Capital One to assist them in the collection of the above account," which referred to the summary at the top of the letter listing Capital One as the creditor, specifying the account number, and identifying the current balance as $832.24. (*Id.*) The letter provides the following:

If you notify this office in writing within 30 days from receiving this notice, this office will obtain verification of the debt or obtain a copy of a judgement and mail you a copy of such judgement or verification.

(Mem. Law Supp. Pl.'s Mot. Class Certification Ex. A.) Above the detachable portion of the letter was the following statement: "This is an attempt to collect a debt. Any information obtained will be used for that purpose. This is a communication from a debt collector." (*Id.*) Prince's minimum monthly payment for her account was $28. (Pl.'s Mem. Reply Def.'s Opp'n Mot. Class Certification Ex. D.)

## II. Legal Standard

Summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). There is a "genuine" issue if the evidence would permit a reasonable jury to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The moving party must make an initial showing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-movant must then "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party

will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. 2548. In determining whether the non-moving party has established each element of its case, the court must draw all reasonable inferences in the non-moving party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## III. Discussion

■ The FDCPA generally applies only to "debt collectors." *Pollice v. Capital Asset Research Corp., Ltd.,* 225 F.3d 379, 403 (3d Cir.2000). Whether a defendant is a "debt collector" as defined by the FDCPA is a question of law appropriate for resolution on summary judgment. *See id.* (deciding that defendants were debt collectors for purposes of a motion for summary judgment); *Bailey v. Security National Servicing Corp.,* 154 F.3d 384, 387–88 (7th Cir.1998) (deciding that defendants were not debt collectors for purposes of a motion for summary judgment); *Wadlington v. Credit Acceptance Corp.,* 76 F.3d 103, 106–07 (6th Cir.1996) (deciding that the defendants were not debt collectors for purposes of a motion for summary judgment). The FDCPA's definition of "debt collector" excludes "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity ... (iii) concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C.S. § 1692a(6)(F). Therefore, NCO is not covered by the FDCPA and summary judgment must be granted if Prince's account was not "in default" when NCO obtained the debt. The parties dispute whether Prince's account was in de-

fault at the time it was referred to the defendant.

## 1. Whether the Account was in Default

■ The FDCPA does not define "default." [2] The FDCPA governs the collection of debts by third parties, and it does not govern the terms of a debt between the original debtor and creditor. The terms of a debt between a debtor and creditor are frequently governed by legislation or contract provisions, and the governing terms often contain a provision regarding when the account is considered "in default." One reasonable interpretation of the FDCPA is that the drafters intended for the question of default to be determined on a case-by-case basis by applying the specific definition of "default" that governed the underlying debt. In an informal staff opinion letter to the President and Chief Executive Officer of TSYS Total Debt Management, Inc. dated May 23, 2002, the Federal Trade Commission ("FTC") discussed the definition of default in the FDCPA:

> We believe that, in the absence of a contractual definition or conclusive state or federal law, a creditor's reasonable, written guidelines may be used to determine when an account is "in default." We note that, in evaluating guidelines to determine reasonableness, we would consider the entirety of the circumstances, including, but not limited to, whether the guidelines are applied consistently and whether they are designed for administering accounts, rather than for circumventing the FDCPA. For example, we would not consider a set of guidelines reasonable if, under those

---

**2.** Webster's Dictionary provides two definitions of "default" that apply in a financial context: "failure to do something required by duty or law" or "a failure to pay financial debts." *Webster's Ninth New Collegiate Dic-* *tionary* 332 (9th ed.1983). These definitions do not always correspond with the definition of "default" that determines the formal status of an account.

guidelines, the same account were deemed in default for purposes of determining whether a third-party collector is a "debt collector" under the FDCPA. (Pl.'s Reply Def.'s Opp'n Class Certification Ex. E at 2 *available at* http://www.ftc.gov/os/statutes/fdcpa/letters/demayo.htm.) FTC informal opinion letters are "merely ... suggestion[s] that the stated interpretation[s][are] the 'more likely' meaning of the statute" and "should be given some weight by this court" but are not binding. *Staub v. Harris*, 626 F.2d 275, 279 (3d Cir.1980) (citations omitted).

Several district courts have addressed the definition of "default" under the FDCPA and have applied the definition of "default" in the relevant statutory or contractual provisions governing the debt between the original parties. *See Skerry v. Massachusetts Higher Education Assistance Corp.*, 73 F.Supp.2d 47 (D.Mass. 1999) (addressing the question of whether the federal student loan at issue was "in default" for purposes of the FDCPA and determining that under the definition of "default" in the applicable statute, the Federal Family Education Loan Program, the debt was not in default); *Kvassay v. Hasty*, 236 F.Supp.2d 1240 (D. Kan.2002) (holding that where state law provides when a check becomes overdue but does not specify when a check is in default, the court will not rule that the debt was in default); *Hartman v. Meridian Financial Services*, 191 F.Supp.2d 1031 (W.D.Wis. 2002) (holding that where the debt was governed by plaintiffs' contracts with the creditor, and the contract said that the debtor was in default if he or she failed to make a payment by its due date, the debt

was in default for purposes of the FDCPA when the debtor was late in making a payment).

In the present case, the parties have pointed to no federal or state law governing the debt. Therefore, I will look within Capital One's standard customer agreement for relevant provisions defining the debt.[3] Capital One's standard customer agreement has the following provision about defaulting:

> Default. We may consider you to be in default under this Agreement if: (a) you fail to pay the minimum payment on time, (b) you exceed your credit limit, or (c) you pay us with funds that are returned for any reason. To the extent permitted by law, you may also be in default under this Agreement if: (1) you violate any of the other terms of this Agreement, or any of the terms of any other agreement with us or any of our affiliates, or (2) you made any false or misleading statements on your application, or (3) bankruptcy or other insolvency proceedings are instituted by you or against you.

The customer agreement's use of the word "may" indicates that the default status is within Capital One's discretion. The parties dispute whether Capital One considered the account to be in default.

NCO made an initial showing that there is no genuine issue of material fact as to the status of the account by providing Capital One's representation to NCO that the account was not in default. The Account Servicing Agreement between NCO and Capital One indicates that each account referred to NCO was not in default:

> Capital One represents that, for the entire term of this Agreement, all Ac-

---

**3.** Parties have not provided a copy of plaintiff's customer agreement, they have merely provided a copy of Capital One's standard customer agreement. Without other evidence, I will assume that Prince and Capital One entered into a standard customer agreement.

counts referred to Agency for Services shall be existing receivables of Capital One at the time of transfer to Agency and that each Account referred for Services is not in default at the time the Account is referred to Agency for Services, nor are any of the Accounts referred for Services the subject of any acceleration or enforcement action at the time of referral to Agency. The parties agree that Accounts which are not restricted shall not be deemed to be delinquent or in default.

This evidence of Capital One's state of mind with regard to whether the debt was in default is a satisfactory initial showing that Capital One did not consider Prince's account to be "in default." Therefore, to defeat summary judgment, Prince must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. 2548.

■ Prince argues that the debt was in default without providing evidence to support this argument. The February 1, 2003 letter from NCO to Prince listed the minimum amount due as $113,[4] which is in excess of Prince's minimum monthly payment of $28.[5] (Pl.'s Mem. Reply Def.'s Opp'n Mot. Class Certification Ex. D.) Be-

cause the customer agreement lists default as a possible reason that the minimum monthly payment might increase,[6] Prince infers that she was in default at the time NCO sent the letter. Plaintiff provides no evidence that the $113 listed on the letter as the minimum amount due reflects an increased minimum monthly payment. The letter was not an account statement, and therefore, the $113 might include accumulated monthly payments and/or other fees. Even if a reasonable inference can be made that the monthly minimum payment was raised, that does not demonstrate that Prince's account was in default. A new monthly minimum payment does not automatically result from a default, nor is there any evidence that a default is the only way a minimum monthly payment can be increased. This is too attenuated an inference.

Under the FTC's informal staff opinion letter referenced above, a "creditor's reasonable, written guidelines" may be used to determine whether an account is "in default." The written guidelines provided by Capital One give Capital One discretion to determine whether Prince's account was "in default." NCO provided evidence that Capital One determined that Prince's account was not "in default," and Prince has not demonstrated a genuine issue of material fact by providing evidence to the con-

4. Although the date NCO received the account from Capital One is the relevant date for determining whether NCO is a "debt collector" rather than the date the letter was sent by NCO to Prince, neither party claims that the status of the account changed between January 31, 2003, when NCO obtained the account (Opp'n Mot. Class Certification Ex. B), and February 1, 2003, the date of the letter from NCO to Prince (Mem. Law Supp. Pl.'s Mot. Class Certification Ex. A).

5. To support their assertion that the minimum monthly payment is $28, plaintiff attaches a document appearing to be a credit report issued by Experian on April 15, 2003,

which lists $28 as plaintiff's monthly payment.

6. The customer's agreement provides the following:

> After you are in default (or after we give you any notice of or right to cure the default if required by law), we may restrict your account from new transactions, or close your account and demand immediate payment of the entire outstanding balance. In addition, as a result of the default, your minimum payment may increase without advance notice.

trary. The FTC's letter suggests that the creditor's guidelines should not be used to determine whether the account is "in default" if those guidelines are "unreasonable." Whether guidelines are reasonable may be evaluated by whether "the guidelines are applied consistently" and whether "they are designed for administering accounts, rather than for circumventing the FDCPA." Therefore, under the FTC's letter, Capital One's guidelines may be used unless Prince provides evidence that Capital One generally made representations like the one to NCO even when accounts were clearly in default in order to circumvent the FDCPA. Prince has provided no evidence to suggest that Capital One made representations to NCO or other parties that defaulted accounts were not in default. Even when all reasonable inferences are drawn in Prince's favor, Prince has not made a showing sufficient to demonstrate that there is any genuine issue of fact as to whether Prince's account was in default.

### 2. Whether Defendant is Estopped from Denying it is a Debt–Collector

Prince argues that even if the debt was not in default, NCO should be estopped from arguing that it is not a debt-collector within the FDCPA. The Third Circuit has not addressed an estoppel argument as it applies to the definition of "debt-collector" under the FDCPA, but it did address an estoppel argument applied to the definition of "debt" under the FDCPA. *Zimmerman v. HBO Affiliate Group*, 834 F.2d 1163, 1169 (3d Cir.1987). In *Zimmerman*, the court entertained the claim that defendant should be estopped from asserting the obligation was not a debt. *Id.* It held that one essential element of an estoppel is a change in the respective positions of the parties in reliance on a party's statement or representation. *Id.* at 1169. Because that essential

element was not satisfied, the court did not have to address a second element: "whether the defendants might have characterized the asserted obligation in such a manner as to bring it within the statutory definition of a 'debt.'" *Id.*

The Seventh Circuit has estopped a defendant from denying its status as a debt collector under § 1692a(6)(F). *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 538–39 (7th Cir.2003). In *Schlosser*, the defendant acquired a debt before it was defaulted but believed the debt was already defaulted when acquired. *Id.* at 537. The defendant attempted to collect the debt by sending the plaintiff a letter that stated, "This letter constitutes formal notice of default ..." *Id.* at 535. The Seventh Circuit held that, even though the debt was not actually in default, the defendant would be treated as a debt-collector under the FDCPA. *Id.* at 539.

NCO has not made assertions that it fits within the statutory definition of "debt collector," and the parties did not change their respective positions in reliance on NCO's assertions. Unlike in *Schlosser*, NCO's letter did not claim that the debt was in default. The letter does not assume a default, rather the letter provides the following:

> If you notify this office in writing within 30 days from receiving this notice, this office will obtain verification of the debt or obtain a copy of a judgement and mail you a copy of such judgement or verification.

This language suggests that on the letter recipient's request, NCO will provide verification of the debt if the recipient's debt is not in default or a copy of the judgment if the recipient's debt is in default. The letter does not indicate that there will be any consequences if the recipient takes no action. Prince asserts that NCO appeared

to be collecting a defaulted debt because it listed the current balance as $832.24 at the top of its February 1, 2003 letter and then wrote, "We have been requested by Capital One to assist them in the collection of the above account." Prince argues that this language suggests that NCO was charged with collecting the entire $832.24 balance. The minimum amount due, however, $113, was clearly indicated at the bottom of the letter. Furthermore, the use of the term "debt" in the letter does not constitute an admission that NCO is a "debt collector" under the FDCPA. The language of the statute, "a debt which was not in default at the time it was obtained," 15 U.S.C.S. § 1692a(6)(F), presumes that a debt can exist without being in default. Therefore, the statement "this is an attempt to collect a debt" is not an admission as to whether defendant is a "debt collector" within the meaning of the FDCPA.

NCO's letter did include the statement "this is a communication from a debt collector." This is not necessarily an admission that NCO is a "debt collector" under the FDCPA. Section 1692a(6) provides that a person "who regularly collects or attempts to collect ... debts owed or due or asserted to be owed or due another" may be excluded from definition of "debt collector" under the FDCPA "to the extent such activity ... concerns a debt which was not in default at the time it was obtained by such person." The general definition of "debt collector" under section 1692a(6) refers to the person or entity and the exception in subsection (F) refers to the debt at issue, so an entity may generally be a "debt collector" without being a "debt collector" in a specific situation. Furthermore, Prince has provided no evidence that she changed her position in reliance upon NCO's characterizations. Therefore, NCO is not estopped from arguing that it is not a "debt collector" under the FDCPA.

## IV. Conclusion

Even when all reasonable inferences are drawn in Prince's favor, Prince has not provided enough facts to establish that NCO is a "debt collector" under the FDCPA. Defendant's motion for summary judgment is granted.

## *ORDER*

**AND NOW**, this _____ day of November 2004, defendant's motion for summary judgment (Docket # 14) is **GRANTED**.

Plaintiff's motion to certify class (Docket # 4) is **DENIED** as moot.