**Martin MCDERMOTT, Plaintiff,**

v.

**NATIONSTAR MORTGAGE, LLC, et al., Defendants.**

**CIVIL ACTION NO. 13–6980**

United States District Court, E.D. Pennsylvania.

Signed November 13, 2015

Arkady Eric Rayz, Dmitry A. Braynin, Kalikhman & Rayz LLC, Huntingdon Valley, PA, Gerald D. Wells, III, Connolly Wells & Gray, LLP, King of Prussia, PA, for Plaintiff.

Martin C. Bryce, Jr., S. Clifford Sacalis, Ballard Spahr Andrews and Ingersoll, L.L.P., Philadelphia, PA, for Defendants.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

Plaintiff Martin McDermott brings this action individually and on behalf of a putative class [1] under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692d–1692g, against Defendant Nationstar Mortgage, LLC ("Nationstar"), a Delaware limited liability company engaged in the business of mortgage lending. Before the Court is Nationstar's Motion for Summary Judgment. For the reasons that follow, the Court will deny the motion.

---

1. The Court has postponed considering class certification until examining the merits of Plaintiff's claim by way of Defendant's motion for summary judgment. *See* Fifth Scheduling Order 1 n.1, ECF No. 42. In an Order dated January 7, 2015, the Court explained that "[i]f any of Plaintiff's claims survive summary judgment, the parties will of course have an opportunity to take additional discovery regarding class certification." *Id.*

## I. BACKGROUND

### A. *Factual Background*[2]

In November 2009, McDermott financed the purchase of a home in part through a mortgage from Harleysville National Bank and Trust Company in the amount of $191,468.00. Mem. Law Support Def.'s Mot. Summ. J. 4, ECF No. 43–1 [hereinafter "Def.'s Mem."]. Shortly thereafter, McDermott's loan was transferred to Bank of America ("BOA"), and BOA began servicing the loan. *Id.*

In mid–2011, Defendant experienced difficulty making his monthly payments and entered into a forbearance agreement with BOA. *Id.* at 4. In December 2012, BOA advised McDermott that he was eligible for a loan modification program administered by the Federal Housing Authority ("FHA"). *Id.* at 4–5. In January 2013, McDermott and BOA entered into an FHA Trial Period Plan Agreement ("TPPA") to begin the loan modification process. *Id.* at 4.

Under the TPPA, McDermott agreed to pay $1,339.77 per month to BOA between February 2013 and April 2013. *Id.* If McDermott successfully complied with the new payment schedule, BOA agreed to consider McDermott's loan "current under the terms of [ ] the Mortgage on the Property and [ ] the Note secured by the Mortgage." *Id.* at 5.

On May 9, 2013, after successfully completing the TTPA's obligations, BOA informed McDermott by letter that he was approved for loan modification. *Id.* at 5. The letter instructed McDermott as follows:

You need to carefully review the enclosed Federal Housing Administration (FHA) Loan Modification Agreement and summary of your modified mortgage, sign where indicated and return to us by June 8, 2013 before we can modify your loan. The Loan Modification Agreement must be signed by all borrowers and any other owner(s) of the property in front of a notary and returned.

Def.'s Mem. Ex. E, at 1, ECF No. 43–6.

On May 13, 2013, before McDermott had signed or returned the Loan Modification Agreement, BOA informed McDermott by letter that it would transfer the servicing of his mortgage loan to Defendant Nationstar, effective June 4, 2013. Def.'s Mem. 6. In the letter, BOA stated that the transfer would not affect any terms or conditions of the mortgage loan, and that "[i]f [McDermott is] being considered for a loan modification or other foreclosure avoidance program, [the] new servicer Nationstar Mortgage LLC is aware of your current account status and will have all of your documents." *Id.* Ex. H, at 1.

Then, on May 30, 2013,[3] Nationstar wrote McDermott to confirm that Nationstar would begin servicing his loan effective June 4, 2013. Pl.'s Resp. 19; Def.'s Mem. 6. The letter stated that its purpose was "to inform [McDermott] of certain information relating to the pending transfer of [McDermott's] loan." *See* Def.'s Mem. Ex. I. The letter made no reference to the terms of the loan, the debt's amount, or the original creditor.

---

**2.** For the purposes of this motion, McDermott does not dispute most of Nationstar's version of the facts, except to the extent that the referenced document speaks for itself or McDermott believes it calls for a legal conclusion. Pl.'s Resp. Statement Undisputed Facts, ECF No. 46–2. Any facts that McDermott otherwise disputes are addressed herein where pertinent.

**3.** *See infra* note 9 (discussing the date of the May 2013 letter).

On the same day that Nationstar officially acquired servicing rights to McDermott's loan—June 4, 2013—McDermott signed the Loan Modification Agreement ("the Agreement"), and forwarded the document to BOA. Def.'s Mem. 5. BOA signed the Agreement on June 6, 2013, and sent a fully executed copy of the document to McDermott on June 7, 2013. *Id.* Ex. G.

The Agreement:

(1) modified the principal amount of the mortgage from $180,748.59 to $192,318.65;

(2) lowered Plaintiff's monthly mortgage payment to $1335.73;

(3) lowered the interest rate from 4.875% to a fixed rate of 3.875% for the life of the loan; and

(4) extended the maturity date of the loan to 2043.

Def.'s Mem. 6. According to the Agreement, interest would begin to accrue at 3.875% on the modified principal balance as of June 1, 2013, and the new monthly payment was due the same day. *Id.* at 6.

On June 18, 2013, Nationstar notified McDermott by letter that BOA had transferred the servicing of the loan on June 4, 2013, and that "[n]othing else about your mortgage loan will change." *Id.* at 6 n.4; *id.* Ex. J, at 1. The letter additionally stated in a disclaimer that "[t]his is an attempt to collect a debt, and any information obtained will be used for that purpose." *Id.* Ex. J, at 1.

Also on June 18, 2013, Nationstar sent McDermott a notice, described as part of a "welcome packet," which listed the unpaid principal balance of McDermott's loan as $180,748.59 and the total amount due as $15,993.12. *Id.* at 7; *id.* Ex. K, at 1. These numbers reflected the original loan's terms, not the terms of the Loan Modification Agreement. The notice further informed McDermott that "[i]f you are in the process of applying for or providing information related to a workout (including modification) with BANK OF AMERICA, N.A., we anticipate that your information will soon be transferred to Nationstar Mortgage." Def.'s Mem. Ex. K, at 2.

On June 20, 2013, Nationstar sent McDermott a pre-foreclosure "Act 91 Notice," which stated "[t]his is an official notice that the mortgage on your home is in default and the lender intends to foreclose." Def.'s Mem. 7; *id.* Ex. L, at 1. The notice asserted that if McDermott did not cure the default, Nationstar would accelerate the mortgage debt and foreclose upon the property. Def.'s Mem., Ex. L, at 6. It also stated in all capital letters that Nationstar "IS A DEBT COLLECTOR AND THAT THIS IS AN ATTEMPT TO COLLECT A DEBT." *Id.* at 8.

Nationstar received a copy of the Agreement between McDermott and BOA on approximately June 21, 2013. Def.'s Mem. 9; Pl.'s Resp. Statement Facts 5, ECF No. 46–2. Also on June 21, 2013, Nationstar sent McDermott a mortgage loan statement that again failed to reflect the Loan Modification Agreement's terms. Def.'s Mem. 12. Instead, the statement reflected the original mortgage's terms, listing the principal balance as $180,748.59, the interest rate at 4.875%, the monthly amount owed as $1431.58, and a past due payment of $15,791.34. *Id.*; *see also id.* Ex. M.

On July 11, 2013, Nationstar sent another letter to McDermott, stating that his payment was past due and that the property could be referred to foreclosure on July 25, 2013. Def.'s Mem. 8; *id.* Ex. N. Nationstar asserted that "[w]e have been unable to contact you or we have not yet received a complete initial package / borrower response package from you to consider you for a loan modification." Def.'s Mem. Ex. N, at 4. The letter also contained the same pre-Agreement information regarding McDermott's loan and once

more stated that the letter was a communication from a debt collector. *Id.* at 1, 5.

On July 18, 2013, McDermott received yet another mortgage statement from Nationstar that listed the same pre-Agreement information concerning the mortgage's principal amount, the interest rate, and the amount due.[4] Def.'s Mem. 8; *id.* Ex. O.

Then, in November 2013, McDermott received a copy of a letter sent by Nationstar to the Pennsylvania Attorney General's Office, which was dated October 22, 2013. Def.'s Mem. 9; *id.* Ex. R. In response to a Consumer Complaint McDermott had filed, the letter implicitly acknowledged that Nationstar had attempted to collect inaccurate amounts and stated that, as of October 1, 2013, those issues "have been resolved." Letter to Att'y Gen., Oct. 22, 2013, Def.'s Mem. Ex. R., at 1. Nationstar stated that it had "updated the account to reflect to the terms of the agreement with Bank of America, N.A." *Id.* The letter concluded:

> We sincerely regret any inconvenience or delay Mr. McDermott may have experienced regarding this matter. Please know that Nationstar diligently worked to update the account. In order to complete the review of the previous servicer modification, Nationstar had to receive verification of the modified terms from Bank of America.

*Id.*

### B. *Procedural History*

On December 2, 2013, McDermott commenced this action in federal court, asserting the following two counts on behalf of himself and a putative class:

(1) Violation of the FDCPA, 15 U.S.C. §§ 1692d–1692g, and

(2) Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Cons.Stat. §§ 201–2(3)–(4), 201–3, 201–9.2(a).

Compl. ¶¶ 107–124, ECF No. 1.

McDermott avers that, by sending inaccurate notices and beginning the foreclosure process on his home, Nationstar acted with the purpose of deceiving unsuspecting consumers in order to obtain additional revenue and profit. Compl. ¶ 91. McDermott also claims that Nationstar "utilized various methods calculated to confuse, mislead, distract, coerce, and convert consumer funds for Defendant's sole benefit, by employing unethical business practices to secure pure financial gain and unjust financial enrichment." *Id.* ¶ 92. He further contends that members of a putative class "have sustained damages arising out [of] the same wrongful and uniform practices of Defendant." *Id.* ¶ 105.

On January 31, 2014, Nationstar filed a Motion to Dismiss the Complaint in its entirety. ECF No. 9. Following a hearing on March 11, 2014, this Court denied Nationstar's Motion to Dismiss, ECF No. 20, and entered a scheduling order, ECF No. 21.

Nationstar filed its Answer on April 1, 2014, ECF No. 26, and then eventually filed a motion for summary judgment on both of McDermott's claims. ECF No. 43. In response, McDermott voluntarily withdrew the UTPCPL claim. Pl.'s Resp. 25, ECF No. 46. Thereafter, Nationstar moved for leave to file a reply brief in further support of its motion, attaching the brief thereto. ECF No. 47. McDermott likewise filed a response to this second motion.[5] ECF No. 48. With only McDer-

---

**4.** Nationstar also sent McDermott mortgage statements on both August 20, 2013, and September 18, 2013. Def.'s Mem. 8. Each listed the pre-Agreement information concerning

his mortgage's principal amount, its interest rate, and the amount due. *Id.*

**5.** The Court will grant both parties' motions for leave to file reply briefs.

mott's FDCPA claim remaining, Nationstar's motion for summary judgment is now ripe for disposition.

## II. LEGAL STANDARD

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir.2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). A fact is "material" if proof of its existence or nonexistence might affect the outcome of the litigation; a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

The court will "mak[e] all reasonable inferences in the nonmoving party's favor." *Pignataro v. Port Auth.*, 593 F.3d 265, 268 (3d Cir.2010). While the movant bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation then shifts the burden to the nonmovant who must "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250, 106 S.Ct. 2505 (internal quotation marks omitted). Summary judgment is only appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Jensen v. Pressler & Pressler*, 791 F.3d 413, 424 (3d Cir.2015) (alteration in original) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

## III. DISCUSSION

### A. *The FDCPA*

■■■■ "The FDCPA provides a remedy for consumers who have been subjected to abusive, deceptive or unfair debt collection practices by debt collectors." *Piper v. Portnoff Law Assocs., Ltd.*, 396 F.3d 227, 232 (3d Cir.2005). One of the FDCPA's basic tenets "is that all consumers, even those who have mismanaged their financial affairs resulting in default on their debt, deserve the right to be treated in a reasonable and civil manner." *FTC v. Check Inv'rs, Inc.*, 502 F.3d 159, 165 (3d Cir. 2007). As such, the FDCPA prohibits a debt collector from using certain collection methods. *Id.* at 166 (citing *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*, 111 F.3d 1322, 1324 (7th Cir.1997)). The prohibited methods include, among other things, "any conduct the natural consequence of which is to harass, oppress, or abuse any person," 15 U.S.C. § 1692d; "any false, deceptive, or misleading representation[s]," *id.* § 1692e; and any "unfair or unconscionable means" of collecting a debt, *id.* § 1692f. The FDCPA also requires debt collectors to include specific debt verification language in certain communications connected to their debt collection efforts. *See id.* § 1692g(a).

■■■ For the FDCPA's protections to apply, two threshold requirements must be satisfied. First, the person or entity engaging in the prohibited practice must be a "debt collector" within the meaning of the statute. *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 403 (3d Cir.2000) ("The FDCPA's provisions generally apply only to 'debt collectors.'"). Second, the prohibited practice must have been "used in an attempt to collect on a 'debt.'" *Id.* at 400.

### B. *Analysis*

Nationstar contends that McDermott's FDCPA claim fails as a matter of law for two reasons: (1) the FDCPA does not

apply because Nationstar is not a "debt collector," and (2) Nationstar did not violate 15 U.S.C. § 1692g, which requires specific debt verification language for the "initial communication with a consumer in connection with the collection of any debt." Def.'s Mem. 10. The Court will address each argument in turn.[6]

### 1. *Nationstar as a "Debt Collector"*

Nationstar first contends that McDermott's claim fails as a matter of law because Nationstar is not a "debt collector" under the FDCPA. *Id.*

The FDCPA is intended to combat "the use of abusive, deceptive, and unfair debt collection practices by ... debt collectors." 15 U.S.C. § 1692(a). As such, the FDCPA draws a distinction between "debt collectors," who are covered by the statute, and "creditors," who are not. 15 U.S.C. § 1692a(6).

The FDCPA defines "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." *Id.* A "creditor" is broadly defined as one who "offers or extends credit creating a debt or to whom a debt is owed," 15 U.S.C. § 1692a(4), and a creditor is generally considered to be restrained from abusive collection practices "by the desire to protect [its] good will when collecting past due accounts," *FTC*, 502 F.3d at 173 (quoting S.Rep. No. 95–382, at 2 (1977)).

The two FDCPA categories—debt collectors and creditors—are, for purposes of applying the statute to a particular debt, mutually exclusive. *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536

(7th Cir.2003). Yet, "for debts that do not originate with the one attempting collection, but are acquired from another, the collection activity related to that debt could logically fall into either category." *Id.*

In some instances, the acquiring entity acts as a mere creditor because it services the loan in the same way as the original entity that created the debt. *FTC*, 502 F.3d at 173. In others, the acquiring entity acts more like a debt collector if it has acquired the debt purely for the purpose of collection. *Id.* The FDCPA distinguishes between these two possible scenarios by looking to the "status of the debt when it was acquired." *Id.* Accordingly, the term "debt collector" specifically excludes "any person collecting or attempting to collect on any debt owed" if the debt "was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F).

Here, to determine whether the loan was in default "at the time it was obtained" by Nationstar, the parties attempt to distinguish between the time when the *servicing rights* effectively transferred from BOA to Nationstar and the time when *the account* contractually transferred from BOA to Nationstar.

Nationstar argues that it is not a "debt collector" because, due to the Loan Modification Agreement, McDermott's loan was not in default when the servicing rights effectively transferred to Nationstar on June 4, 2013. Def.'s Mem. 11. Although Nationstar persistently treated McDermott's loan as in default, Nationstar now reasons that it is not a "debt collector" under the FDCPA because the default had in fact been cured by the Agreement prior to June 4, 2013, when Nationstar been servicing the loan. *Id.* at 12.

---

**6.** Attached to this Memorandum as Exhibit "A" is a timeline with the dates most relevant to the two grounds for Nationstar's Motion.

The events corresponding to those dates are provided with appropriate citations.

In response, McDermott avers that the determinative date is when Nationstar contractually acquired the account from BOA, not when servicing began. Pl.'s Resp. Mot. Leave File Reply Br. 2, ECF No. 48 [hereinafter "Pl.'s Resp. Reply Br."]. McDermott asserts that the loan was in default at the time Nationstar contractually acquired the loan from BOA sometime in May 2013,[7] and the Agreement did not take effect until June 2013. Therefore, McDermott contends that Nationstar was a "debt collector."

The FDCPA does not specifically demarcate when an entity has "obtained" a debt as the term is used in the definition of a "debt collector" in § 1692a(6). But courts have concluded that the FDCPA "treats assignees as debt collectors if the debt sought to be collected was in default when acquired by the assignee, and as creditors if it was not." *Schlosser*, 323 F.3d at 536.

Courts have, at times, used inconsistent language when determining if a debt was in default when obtained. *Compare Pollice*, 225 F.3d at 403 (explaining that "an assignee may be deemed a 'debt collector' if the obligation is already in default *when it is assigned*" (emphasis added)), *with Fenello v. Bank of Am., N.A.*, 577 Fed. Appx. 899, 902 (11th Cir.2014) (focusing on "the time [defendant] *became the servicer*" (emphasis added)), *and Haber v. Bank of Am., N.A.*, No. 14–0169, 2014 WL 2921659, at *7 (E.D.Pa. June 27, 2014) ("[A] mortgage servicer, whether servicing a debt belonging to itself or a different creditor, is not a 'debt collector' under the FDCPA

unless the mortgage was already in default at the time the mortgage servicing company began servicing the loan."), *and Dawson v. Dovenmuehle Mortg., Inc.*, No. 00–6171, 2002 WL 501499, at *5 (E.D.Pa. Apr. 3, 2002) (finding that an entity is a "debt collector" under the FDCPA "where the mortgage at issue was already in default at the time *when servicing began*" (emphasis added) (citing *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir.1985)).

The Third Circuit has used the terms "assigned," *Pollice*, 225 F.3d at 403, and "acquired," *FTC*, 502 F.3d at 173, when addressing the situation where one debt collector has obtained the debt from another. Yet, district courts in this Circuit consistently cite to *Pollice* for the proposition that "[i]f an existing debt is assigned, the assignee of the obligation is not a 'debt collector' if the obligation is not in default *at the time of the assignment;* but if the obligation is in default *when assigned*, the assignee may be a 'debt collector.'" *New–Howard v. JP Morgan Chase Bank N.A.*, No. 11–2855, 2013 WL 6096232, at *7 (E.D.Pa. Nov. 20, 2013); *see also, e.g., Kovacik v. PNC Bank, N.A.*, No. 15–0960, 2015 WL 5255265, at *3 (W.D.Pa. Sept. 9, 2015) (quoting the "at the time of assignment" language from *Pollice*).

Construing this language literally, the determinative date in this case would be when BOA assigned the contract to Nationstar in May 2013, even though Nationstar did not technically begin servicing the loan until June 4, 2013. As such, Nationstar would be a "debt collector" because the loan was still in default when Nationstar acquired it sometime in May

---

**7.** To establish that Nationstar must have contractually acquired the account from BOA sometime in May 2013, McDermott relies on the following: (1) McDermott was notified by letter on May 13, 2013, that the servicing of his mortgage loan would transfer to Nationstar; (2) Nationstar sent McDermott the Welcome Letter at the end of May 2013; and (3) Nationstar's corporate representative stated in his deposition that "contractually I think the exchange of transfer happened in May." *See* Pl.'s Resp. Opp'n Summ. J. 14–15, ECF No. 46.

2013. Indeed, as Nationstar itself admits, McDermott's loan was not cured until later in June 2013. Def.'s Mem. 12. Thus, viewing the facts in the light most favorable to McDermott, the loan was in default when Nationstar obtained it, and summary judgment must be denied on this basis.

But the Court need not draw a semantic distinction. For the purposes of the present motion, even if the determinative date is when servicing began on June 4, 2013, as McDermott contends, the loan was still in default. Making all reasonable inferences in McDermott's favor, the default had not yet been cured by June 4, 2013, because (1) BOA had no obligation to modify the loan until McDermott returned and executed the Agreement, and (2) BOA would not have accepted the Agreement unless the loan was still in default when McDermott signed the Agreement.

First, although BOA preliminarily approved McDermott for the modification on or about May 9, 2013, Def.'s Mem. Ex. E, BOA had no obligation to modify the loan until McDermott signed and returned the Agreement. When BOA originally notified McDermott that he was eligible for a modification, the notification letter included a paragraph entitled "How to Accept this Offer," which stated as follows:

> You need to carefully review the enclosed Federal Housing Administration (FHA) Loan Modification Agreement and summary of your modified mortgage, sign where indicated and return to us by June 8, 2013 before we can modify your loan. The Loan Modification

Agreement must be signed by all borrowers and any other owner(s) of the property in front of a notary and returned.

Def.'s Mem. Ex. E, at 1. The notification letter further instructed McDermott that, "[i]f you want to accept the terms of this proposed loan modification, each borrower must sign the loan modification agreement and the other enclosed documents." *Id.* at 3. The same notification letter also explained that "Bank of America, N.A. will continue with normal servicing up to and including referral to foreclosure during the time we are waiting for required signed documents from you." *Id.* at 1. Finally, the letter indicated that the modification was yet to be made, stating that BOA "look[s] forward to taking the final steps to provide you with more affordable mortgage payments." *Id.* Thus, McDermott was in default and his loan was treated as such until the signed documents were returned to BOA.

McDermott did not sign the Agreement until June 4, 2013—the same day that BOA transferred the mortgage loan to Nationstar for servicing. *See* Def.'s Mem. Ex. I. When viewed in the light most favorable to McDermott at this stage of the proceedings, BOA could not have received the signed document any earlier than June 4, 2013, when McDermott signed it. Further, BOA itself did not sign the Agreement until June 6, 2013, and it was not until June 7, 2013 that BOA acknowledged receipt and completion of the Agreement.[8] Def.'s Mem. 5 ¶ 9; Pl.'s Resp. Ex. H, at 1, 12–13.

---

**8.** Even though the Loan Modification Agreement purported to be retroactively effective as of June 1, 2013, *see* Pl.'s Resp. Ex. H ¶ 3, when viewed in the light most favorable to McDermott, it had no retroactive effect on Nationstar's status as a debt collector. Generally speaking, a plaintiff "cannot use a duty created by a separate contract, to which it is neither a party nor a third-party beneficiary, to recover in contract against [a defendant]."

*See, e.g., Axis Specialty Ins. Co. v. Brickman Grp. Ltd., LLC,* 458 Fed.Appx. 220, 224 (3d Cir.2012) (nonprecedential) (discussing Pennsylvania contract law). The same logic holds true in the unique situation presently before the Court where a defendant (i.e., Nationstar) that is neither a party nor a third-party beneficiary to a separate contract (i.e., the contract between BOA and McDermott) seeks to

Thus, drawing all reasonable inferences in McDermott's favor, the loan was still in default when Nationstar began servicing the loan on June 4, 2013, because BOA expressly stated that the modification would not be made until McDermott signed and returned the Agreement.

Second, the loan was still in default when Nationstar began servicing the loan based on the Agreement's express terms. In deciding whether a debt is "in default" at any given time under the FDCPA, courts have looked to the contractual provisions between the creditor and debtor. *See Prince v. NCO Fin. Servs., Inc.*, 346 F.Supp.2d 744, 748 (E.D.Pa.2004) (collecting district court cases).

Under the terms of the Agreement itself, BOA had no obligation to modify the loan unless the loan was still in default when McDermott signed the Agreement. BOA's obligation to modify the loan was expressly conditioned on the continued validity of McDermott's representations regarding the condition of his finances and his property. Pl.'s Resp. Ex. H, at ¶ 2.A– 2.B. The Agreement would not take effect

unless the representations "continue[d] to be true in all material respects." *Id.* at ¶ 3. Most relevant to the present issue, the Agreement required McDermott to certify that he was "in default under the Loan Documents" when he signed the Agreement. *Id.* at 5 ¶ 1.E. Consequently, BOA's signing and acceptance of the Agreement on June 6, 2013, and June 7, 2013, respectively, acknowledged that McDermott's loan was in default on the date of his signing: June 4, 2013.

Therefore, drawing all reasonable inferences in the light most favorable to McDermott, even if the Court were to adopt Nationstar's interpretation that June 4, 2013, is the determinative date, it cannot be said as a matter of law that the default had been cured. Accordingly, Nationstar's argument that it is not a "debt collector" under the FDCPA does not entitle Nationstar to summary judgment.

### 1. *15 U.S.C. § 1692g(a) and the Initial Communication*

Nationstar next maintains that McDermott's claim under 15 U.S.C. § 1692g(a) cannot succeed as a matter of law because the May 2013 [9] letter was not an attempt

---

use the contract to defend against a plaintiff (i.e., McDermott). This is especially true where Nationstar did not acknowledge the contract until it was beneficial for it to do so. Nationstar treated the loan as in default from the moment it began seeking payment.

Moreover, at least one court in this Circuit has suggested that a debt should be considered "in 'default' at the time it was acquired if it could be said to have been in default under ... a subjective view, because either the transferee or the transferor of the debt believed it was in default at the time of the acquisition." *Haber v. Bank of Am., N.A.*, No. 14–0169, 2014 WL 2921659, at \*15 n. 16 (E.D.Pa. June 27, 2014) (citing *Prince v. NCO Fin. Servs., Inc.*, 346 F.Supp.2d 744, 748 (E.D.Pa.2004)). Indeed, it is disingenuous for Nationstar to have treated the debt as in default during all of its actions leading to the filing of this case and then rely on the Agreement that allegedly cured the default to advance its defense.

**9.** There is some disagreement between the parties as to the exact date of the May 2013 letter. McDermott contends that the May 29, 2013, letter attached to Nationstar's motion was not the initial communication between Nationstar and McDermott. Pl.'s Resp. 19. Rather, McDermott refers to a letter dated May 30, 2013, which is included in to Plaintiff's response at Exhibit G, as the initial communication. *Id.*

Nationstar does not have a record of sending the May 30th letter, only the May 29th letter. Def.'s Mot. Leave File Reply Br. 6 n.5, ECF No. 47. However, Nationstar does not seem to dispute McDermott's asserted distinction. Instead, Nationstar simply argues that "[e]ven accepting [McDermott's] premise that the May 30th letter was the initial communication between Nationstar and [McDermott], the letter was also not 'in connection with the collection of a debt.'" *Id.* at 2.

McDermott concedes "there is no substantive difference between [the two letters'] front

to collect a debt, and Nationstar's subsequent notice on June 18, 2013, complied with the statute. Def.'s Mem. 13–15.

In response, McDermott argues that the reverse side of the May 2013 letter contains information that renders it a "communication" related to "the collection of a debt" within the meaning of the FDCPA. Pl.'s Resp. 20–21. McDermott also states that when applying the FDCPA's "least sophisticated consumer" standard, McDermott would reasonably "interpret the correspondence of May 30, 2013, as an attempt to collect a debt." *Id.* at 22.

Under the FDCPA, a debt collector must provide specific information to a debtor in its initial communication related to the collection of a debt or in a communication to be sent within five days after the initial communication. 15 U.S.C. § 1692g(a). The notification must include the following information:

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

■ a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

*Id.*

■ The statute broadly defines "communication" as "the conveying of information regarding a debt directly or indirectly to any person through any medium." *Id.* § 1692a(2). But, § 1692g(a) "does not apply to *every* communication between a debt collector and a debtor." *Grden v. Leikin Ingber & Winters PC,* 643 F.3d 169, 173 (6th Cir.2011). Instead, to fall within § 1692g(a), "an animating purpose of the communication must be to induce payment by the debtor." *Simon v. FIA Card Servs.,* 732 F.3d 259, 266 (3d Cir.2013) (quoting *Grden,* 643 F.3d at 173). So long as the "activity [is] undertaken for the general purpose of inducing payment ... [the] communication need not contain an explicit demand for payment to constitute debt collection activity." *McLaughlin v. Phelan Hallinan & Schmieg, LLP,* 756 F.3d 240, 245 (3d Cir.2014).

■ As the Third Circuit has explained, "communications that include discussions of the status of payment, offers of alternatives to default, and requests for financial information may be part of a dialogue to facilitate satisfaction of the debt and hence can constitute debt collection activity." *Id.* at 245–46. "[A] letter that is not itself a collection attempt, but that aims to make ... such an attempt more likely to succeed, is one that has the requisite connec-

pages (other than the date)," Pl.'s Resp. 20, and Nationstar does not dispute the second page. *Id.* Accordingly, there is no genuine dispute of material fact as to the May 2013 letter, because the exact date does not have a bearing on the outcome of the litigation. *See*

*Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. For the purposes of this motion, viewing the facts in the light most favorable to McDermott, the two-page letter dated May 30, 2013, will be the document to which the Court refers, described as the "May 2013" letter.

tion" to the collection of a debt. *Simon*, 732 F.3d at 266 (alterations in original) (quoting *Grden*, 643 F.3d at 173).

 When a debt collector sends an initial communication in connection with debt collection activity, "more is required than the mere inclusion of the statutory debt validation notice in the debt collection letter—the required notice must also be conveyed effectively to the debtor." *Wilson v. Quadramed Corp.*, 225 F.3d 350, 354 (3d Cir.2000). In determining whether a particular validation notice meets the statutory requirements, it must "be interpreted from the perspective of the least sophisticated debtor." *Graziano v. Harrison*, 950 F.2d 107, 111 (3d Cir.1991) (internal quotation marks omitted).

 The "least sophisticated debtor" standard is "lower than the standard of a reasonable debtor," *Roseanau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir.2008), since "a communication that would not deceive or mislead a reasonable debtor might still deceive or mislead the least sophisticated debtor." *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 454 (3d Cir.2006) (internal quotation marks omitted). While the least sophisticated debtor standard "protects naïve consumers, 'it also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care.'" *Id.* (quoting *Quadramed*, 225 F.3d at 354).

Here, the Court is not persuaded by McDermott's argument that the May 2013 letter is an initial communication in connection with the collection of a debt. The front page of the May 2013 letter expressly states that its purpose is to inform the recipient "of certain information relating to the pending transfer of your loan." Pl.'s Resp. Ex. G. Although the letter implies that payments will be expected, it plainly reads as a welcome letter from a new loan

servicer—that is, one that would be sent to any borrower, not just to borrowers in default. In other words, the May 2013 letter looks to be a communication that Nationstar sent in its capacity as a loan servicer, not in its capacity as a debt collector, and thus its "animating purpose" was not "to induce payment by the debtor." *Simon*, 732 F.3d at 266.

McDermott also contends that the paragraph on the front page encouraging the debtor to visit Nationstar's website is in connection with a debt collection because the website contains "foreclosure alternative" options. Pl.'s Resp. 21. But standing alone, a "website link provided in the communication does not transform the [transfer] notice into an attempt to induce payment." *Olson v. Midland Funding, LLC*, 578 Fed.Appx. 248, 251 (4th Cir. 2014).

The letter's reverse side does not prove any more helpful to McDermott's argument. McDermott specifically refers to the boilerplate provisions that lay out the general consequences of non-payment. Pl.'s Resp. Ex. G, at 2. McDermott relies on *McLaughlin v. Phelan Hallinan & Schmieg, LLP*, 756 F.3d 240 (3d Cir.2014), to argue that these provisions are related to the collection of a debt. But McDermott does not explain how *McLaughlin* can be analogized to the facts of this case.

In *McLaughlin*, the acquiring entity's letter stated that it was "a debt collector attempting to collect a debt" and that information obtained "'may be used for that purpose,' namely to collect a debt." *Id.* at 246. Moreover, the letter "inform[ed] the recipient how to obtain 'updated . . . payoff quotes,' meaning how to obtain current information about the amount that would have to be paid to satisfy the debt." *Id.* (omission in original). The Third Circuit explained that the letter was a "communication[] that include[d] discussions of the

status of payment, offers of alternatives to default, and requests for financial information," which were "part of a dialogue to facilitate satisfaction of the debt and hence can constitute debt collection activity." *Id.* at 245–46. Therefore, the Third Circuit determined that the letter was a communication related to the collection of a debt, and the misrepresentation contained therein was a viable basis for FDCPA relief. *Id.* at 246.

Here, unlike in *McLaughlin*, Nationstar's May 2013 letter did not identify Nationstar as a debt collector attempting to collect a debt. It also did not state that the information obtained may be used to collect a debt or inform McDermott how to obtain updated payoff quotes. The letter did not discuss the status of payment, offer alternatives to default, or request financial information. As such, the general consequences of non-payment set forth on the reverse side of Nationstar's May 2013 letter do not indicate a specific debt collection purpose as found in *McLaughlin*.[10]

McDermott's only allegation weighing in favor of finding that the letter's purpose was to induce some form of payment from McDermott is the nature of the parties' relationship. Specifically, McDermott states that "the 'least sophisticated consumer' would interpret the correspondence of May 30, 2013, as an attempt to collect a

debt[,] especially where . . . this consumer has no other relationship with Nationstar" and "Nationstar had no other reason to contact him." Pl.'s Resp. 22.

However, the parties' relationship, standing alone, is insufficient to establish that the May 2013 letter is a communication in connection with the collection of a debt. *See Venechanos v. Green Tree Servicing, LLC*, No. 14–2268, 2015 WL 4356326, at *7 (M.D.Pa. July 14, 2015) (discussing *Olson*, 578 Fed.Appx. 248, and finding that "Plaintiff's debtor-debt collector relationship, alone, is insufficient to establish that the Notice is a communication in connection with the collection of a debt"). Therefore, despite the parties' newly established relationship, the May 2013 letter still does not constitute a communication subject to § 1692g(a) because it was not made in connection with the collection of a debt.

Alternatively, McDermott characterizes the May 2013 letter as part of a "package of multiple documents," referring in a footnote to the combination of the May letter and two communications from Nationstar dated June 18, 2013.[11] Pl.'s Resp. 21–22, 25; *id.* at 22 n.70 (citing Exs. G, I, J). As such, McDermott does not exclusively rely on a single notice from Nationstar, but rather avers that the welcome package as

---

**10.** For the same reasons, McDermott cannot rely on *Grubb v. Green Tree Servicing, LLC,* No. 13–7421, 2014 WL 3696126 (D.N.J. July 24, 2014), in which a district court applied *McLaughlin. See id.* at *6 (concluding that the welcome letter at issue was a communication in connection with the collection of a debt because "like in *McLaughlin,* the . . . [l]etter provides the amount of debt, explains that the amount necessary to satisfy the debt may increase due to interest and penalties, and specifies how to obtain payoff quotes").

**11.** McDermott raised a version of this argument in his earlier reply to Nationstar's Motion to Dismiss. *See* Pl.'s Resp. Opp'n Mot.

Dismiss, ECF No. 15. Therein, McDermott first argued that the May 30 letter was the initial communication for purposes of § 1692g(a), as he does here, and then made an alternative argument that even if the May 30 letter was not the initial communication, no subsequent communications—including those dated June 18th—satisfied § 1692g(a). *Id.* at 15–16. McDermott contended that although the later communications contained the requisite debt validation language, the information on which the debt validation was based did "not provide the correct principal balance of Plaintiff's mortgage, the interest rate, or the 'total amount due.' " *Id.*

a whole fails to satisfy the statutory requirements.[12] Pl.'s Resp. 21–22.

Nationstar states that even if McDermott were to rely on the later June 18, 2013 notice as the initial communication in connection with the collection of a debt, his § 1692g(a) claim would still fail. Def.'s Mem. 15. Nationstar argues that the June 18 notice contained the requisite debt validation language. *Id.* Specifically, Nationstar explains that the June 18 notice "prominently stated the servicer's name and the balance of Plaintiff's Loan" as well as included "an explicit 'Validation of Debt Notice' section which satisfied the requirements of [the statute]." *Id.*; *see also* Pl.'s Resp. Ex. J. Nationstar thus concludes that even if the June 18 notice, instead of the May 2013 welcome letter, was construed as the initial communication in connection with the collection of a debt, McDermott's § 1692g(a) claim must still fail as a matter of law.

Section 1692g(a) requires, among other things, that the collector provide the consumer with written notice containing the amount of the debt. 15 U.S.C. § 1692g(a)(1). It is clear in this Circuit that the § 1692g(a) validation notice must "be conveyed effectively to the debtor." *Quadramed,* 225 F.3d at 354; *see also Harrison,* 950 F.2d at 111 (entity must "explicate a debtor's rights ... effectively").

Here, even if the June 18 communication provided the requisite § 1692g(a) material on its face, as Nationstar contends, the notice stated the loan's principal balance and the amount due based on the original loan with BOA, prior to the execution of the Loan Modification Agreement. Def.'s Mem. 7 ¶ 19; *see id.* at Ex. K. It was not until October 1, 2013, that Nationstar finally updated McDermott's account to reflect the modification, *see* Def.'s Mem. Ex. R, at 1, after it had already sent McDermott multiple notices based on the pre-Agreement information and threatened foreclosure.

The parties do not directly address the importance of accurate information in a § 1692g(a) notice. Yet it would be wholly irrational for Congress to have required debt collectors to provide consumers with specific debt validation information when collecting on a debt, but to have been completely indifferent as to whether the specific information is accurate.

The entire purpose of the § 1692g(a) validation notice is "to inform a debtor of his rights and obligations to his creditor." *Oppong v. First Union Mortg. Corp.,* 566 F.Supp.2d 395, 400 (E.D.Pa.2008), *aff'd in part, vacated in part on other grounds,* 215 Fed.Appx. 114 (3d Cir.2007). It can hardly be said that a substantially incorrect[13] statement of the debt amount—the core target of the debt collection efforts—

---

12. Although the Third Circuit has stated "there can be only *one* 'initial communication' between a debt collector and a consumer," this statement was made to explain that a plaintiff's § 1692g(a) claim cannot survive the statute of limitations based on letters received after what was indisputably the initial communication in connection with the collection of a debt. *Peterson v. Portfolio Recovery Assocs., LLC,* 430 Fed.Appx. 112, 114 (3d Cir. 2011). If the May 30 letter does not constitute the initial communication because it was not made in connection with the collection of McDermott's debt, as analyzed above, it does not foreclose the characterization of a later communication as "the initial communication

in connection with the collection of [a] debt." 15 U.S.C. § 1692g(a)(emphasis added).

13. The Court need not presently decide the degree to which the information must be incorrect. District courts vary in determining whether "the amount of the debt" is sufficiently accurate to satisfy § 1692g(a)'s notice requirements. *See, e.g., Gesten v. Phelan Hallinan, PLC,* 57 F.Supp.3d 1381, 1388 (S.D.Fla.2014) (collecting cases). But here, Nationstar's letters plainly fall below the standard for compliance. This is not a case where the letter simply provided the amount of debt as of one day prior to the date of the letter. *See, e.g., Grubb,* 2014 WL 3696126, at *8. Instead, in this case, the statements are

"effectively" conveys a debtor's rights and obligations. *Quadramed,* 225 F.3d at 354. A "rational trier of fact," *Jensen,* 791 F.3d at 424, could certainly determine that Nationstar's notice containing the pre-Agreement debt information would deceive or mislead the "least sophisticated debtor." *Quadramed,* 225 F.3d at 354.

 In sum, if the May 30 letter is construed as the initial communication in connection with the collection of a debt, it cannot be said that Nationstar prevails as a matter of law under § 1692g(a), because the undisputed facts show that the letter does not contain the requisite information. Alternatively, if the June 18 letter is con-

strued as the initial communication in connection with the collection of a debt, it cannot be said that Nationstar prevails as a matter of law, because the letter substantially misstates the debt information. Therefore, the Court denies Nationstar's motion for summary judgment as to the § 1692g(a) claim.

## IV. CONCLUSION

For the foregoing reasons, the Court denies Defendant's motion for summary judgment in its entirety. An appropriate order follows.

### EXHIBIT "A"

clearly incorrect. In the June 18, 2013 letter, the "Principal Balance" was stated as $180,748.59, and the "TOTAL AMOUNT DUE" was stated as $15,993.12. Def.'s Mem. 7; *id.* Ex. K. These pre-Agreement terms were further reflected in the subsequent statement, which stated: (a) the principal balance as $180,748.59; (b) the interest rate as 4.875%; and (c) the monthly payment as $1,431.58. *Id.* at 7; *id.* Ex. M. These terms are in stark contrast to the terms in the Loan Modification Agreement, which stated: (a) the principal balance as $192,318.65; (b) the interest rate as 3.875%; and (c) the monthly payment as $1,335.73. *Id.* at 6; *id.* Ex. G, at 4.

306 

**May 9, 2013**
- BOA informs McDermott he has been approved for a loan modification. Def.'s Mem. Ex. E.

**May 2013 (unspecified date)**
- Nationstar contractually acquires McDermott's loan from BOA. Pl.'s Resp. 14-16.

**May 30, 2013**
- Nationstar sends Welcome Letter to McDermott. Pl.'s Resp. Ex. G.

**June 1, 2013**
- Purported retroactively effective date of Loan Modification Agreement. Pl.'s Resp. Ex. H.

**June 4, 2013**
- McDermott executes Loan Modification Agreement. Pl.'s Resp., Ex. H.
- Nationstar effectively acquires servicing rights to McDermott's loan from BOA. Pl.'s Resp. Exs. G, R.

**June 6, 2013**
- BOA executes Loan Modification Agreement. Pl.'s Resp., Ex. H.

**June 7, 2013**
- BOA returns executed copy of Loan Modification Agreement to McDermott and states that modification is finalized. Pl.'s Resp. Ex. H.

**June 18, 2013**
- Nationstar sends notice stating principal balance and total amount due based on pre-Agreement terms. Pl.'s Resp. Ex. J.

## ORDER

AND NOW, this 13th day of November, 2015, for the reasons set forth in the accompanying memorandum, it is hereby ORDERED as follows:

(1) Defendant's Motion for Leave to File a Reply Brief in Further Support of its Motion for Summary Judgment (ECF No. 47) is GRANTED.

(2) Plaintiff's Motion to Respond to Defendant's Reply Brief (ECF No. 48) is **GRANTED**.

(3) Defendant's Motion for Summary Judgment (ECF No. 43) is **DENIED**.

**AND IT IS SO ORDERED.**